### GALLOWAY v. WYATT METAL & BOILER WORKS.*

#### No. 5555.

Court of Appeal of Louisiana. Second Circuit.

Dec. 3, 1937.

Rehearing Denied Jan. 3, 1938.

Writ of Certiorari and Review Granted Feb. 7, 1938.

*Judgment annulled 181 So. 187.

Irion & Switzer, of Shreveport, for appellant.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff suffered physical injuries in a collision between the truck on which he was riding and one owned by defendant, a nonresident corporation, and seeks indemnification for said injuries by this action sounding in damages. The accident occurred in the north end of Caddo parish, and it is alleged that, at the time and place of happening, defendant's truck was using and was being operated on a highway of the state of Louisiana; and, this being true, subjected itself to the provisions of Act No. 86 of 1928, § 1, as amended by Act No. 184 of 1932. Defendant was cited by service on the Secretary of State as is authorized by said acts.

Defendant excepted to the court's jurisdiction, ratione personae. Plaintiff appealed from judgment, based upon written reasons, sustaining the exception.

The plea to the jurisdiction has for its basis the alleged fact that the collision in which plaintiff was injured did not occur upon a public highway of the state.

The amended act, with title, reads:

"To amend and re-enact Section 1 of Act No. 86 of 1928, entitled: 'An act providing for civil process against non-residents in cases arising out of the operation of motor vehicles within the State of Louisiana.' * * *

"Section 1. Be it enacted by the Legislature of Louisiana, That the acceptance by non-residents of the rights and privileges conferred by existing laws to operate motor vehicles on the public highways of the State of Louisiana, or the operation by a non-resident or his authorized employee of a motor vehicle on the said highways other than under said laws, shall be deemed equivalent to an appointment by such non-resident of the Secretary of the State of Louisiana or his successor in office, to be his true and lawful attorney for service of process, upon whom may be served all lawful process in any action or proceeding against said non-resident growing out of any accident or collision in which said non-resident may be involved while operating a motor vehicle on such highways, or while same is operated by his authorized employee; and said acceptance or operation of said vehicle shall be a signification of his agreement that any such process against him which is so served shall be of the same legal force and validity as if served on him personally."

Plaintiff advances and earnestly argues three distinct reasons why the plea to the jurisdiction should be rejected, viz.: (1) That under the provisions of the act, to confer jurisdiction, the accident need not occur on a "public highway"; (2) that the use of a public highway when entering the state and in arriving at the scene of the accident, even though its locus be not on a public highway, is all that is needful to vest the court of such locus with jurisdiction; and (3) that, as a matter of fact, the locus of the accident is on a public highway of the state.

The first two of these propositions may be properly discussed and passed on together, because it seems obvious that, if the vesting of jurisdiction personam, under the act, is restricted to accidents or collisions occurring only "on the public high-ways of the state," jurisdiction does not attach when the locus of the accident or collision is not on such a highway, although it be a link in the route followed by the nonresident in reaching the locus of the accident. We think the unambiguous language of the act determinative of these two contentions. It provides in substance that the operation by a nonresident or his authorized agent of a motor vehicle on the "public highways of the State," whether after complying with legal requirements as a condition precedent to such operation or not, shall be deemed equivalent to appointment of the Secretary of State as agent of such non-resident for the service of process in any action or proceeding against said non-resident *"growing out of any accident or collision in which said non-resident may be involved while operating a motor vehicle on such highways."* There is sound reason for requiring that the locus of the accident or collision referred to be on a public highway of the state as an indispensable prerequisite to the attaching of jurisdiction personam. The validity of a service under acts of the character herein discussed depends upon this fact.

The constitutionality of acts of like or similar character to Act No. 86 of 1928, as amended, has several times been challenged on the ground that they violate the due process and interstate commerce clauses of the United States Constitution. The validity of such statutes has been upheld by the Supreme Court of the United States. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 633, 71 L.Ed. 1091; Kane v. New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222; Hendrick v. Maryland, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385.

The constitutionality of these contested statutes was sustained upon the ground that, since Congress has not legislated on the subject, the states have the inherent right to prescribe uniform regulations necessary for public safety and order as regards the operation upon its highways of all motor vehicles, whether interstate or otherwise, and to this end may require compliance by nonresidents with definite rules as conditions precedent to the legal use of said highways. Such conditions, of course, may not be unreasonably discriminatory against the nonresident. The right of the states to so legislate is but the legitimate exercise of their police power.

In Hess v. Pawloski, supra, a statute of the state of Massachusetts was involved, from which our own act must have been taken, as they are almost identical in phraseology. The court, with Justice Butler as its organ, therein said: "Motor vehicles are dangerous machines, and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and nonresidents alike, who use *its highways*. The measure in question operates to require a nonresident to answer for his conduct in the state where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights. Under the statute the implied consent is limited to proceedings growing out of accidents or collisions on a *highway* in which the nonresident may be involved. It is required that he shall actually receive and receipt for notice of the service and a copy of the process. And it contemplates such continuances as may be found necessary to give reasonable time and opportunity for defense. It makes no hostile discrimination against nonresidents, but tends to put them on the same footing as residents. Literal and precise equality in respect of this matter is not attainable; it is not required. Canadian Northern R. Co. v. Eggen, 252 U.S. 553, 561, 40 S.Ct. 402, 64 L.Ed. 713, 716. The state's power to regulate the use of *its highways* extends to their use by nonresidents as well as by residents. Hendrick v. Maryland 235 U. S. 610, 622, 35 S.Ct. 140, 59 L.Ed. 385, 390. And, in advance of the operation of a motor vehicle on *its highway* by a nonresident the state may require him to appoint one of its officials as his agent on whom process may be served in proceedings growing out of such use."

It will be observed from this quotation from the opinion that the question of jurisdiction turns upon whether the accident or collision occurred upon a highway of the state. If it did not so occur, then it is obvious that the statute does not and cannot affect the matter one way or the other.

▮▮ Plaintiff invokes the familiar canon of construction that in construing legislative enactments, and in applying them to given state of facts, the lawmaker's intent and the motive actuating it should be sought, and argues that if this is done, the conclusion must be reached that the Legislature's intent and purpose in adopting said act is definitely reflected from its title. It will be observed that the language of this title is broader than the language of the act itself, but the title forms no part of the act. It may be considered in seeking legislative intent when the intent is not clearly expressed in the act. Hughes, Tax Collector, v. Rudd, 178 La. 588, 152 So. 300. This title says, "in cases arising out of the operation of motor vehicles within the State of Louisiana"; while the act says, in cases of accident or collision "on the public highways of the State of Louisiana." The lesser is included in the greater. The public highways of the state, of course, are within the state, but there are highways in the state not owned by it. The act is free from ambiguity. Its language is unusually clear. This being true, it should be construed as written.

"When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." Rev.Civ.Code, art. 13.

The final question to be determined is whether the collision herein discussed occurred on a public highway of the state of Louisiana; and in this connection we adopt as correct the following conclusions of fact reached by the trial judge: "The accident happened on the S.E.¼ of the S.W.¼ of Section 25, Township 21, Range 16, on property occupied by the Magnolia Petroleum Company as a pumping plant, and just within the confines of that property. Prior to the occupancy of the property by the Magnolia, the land, in the main, was used for the purposes of cultivation. There is an old road or trail which leads from the Rodessa-Myra road about one half mile away; it ran through a lane, entered the land here involved near the tree shown in the foreground in Exhibit D–1; then curved around the tree to the left and continued on to a few houses and down to Black Bayou; it was used intermittently by people going to and from these places; sometimes they could use it and sometimes they could not; it was never a dedicated road; never worked by the public; and was used very little until the Magnolia plant was built; until that time, it was, at best, merely a neighborhood road or trail."

Neither the state, highway department, nor the parish has any permanent control

over the road. The fee to it reposes in the adjacent owners, and nothing forbids them taking possession of it and closing it to travel. In the past its course was changed when and as often as the owners of the adjacent farms desired.

It is defendant's contention that the 1928 act, as amended, has no application to highways, save those owned by the state; that the words "of the State of Louisiana" imply ownership by the state, and are not synonymous with, "in the State of Louisiana"; and that the definition of "highway" in the State Highway Regulatory Act, No. 21 of 1932, is not controlling of the 1928 act. This definition is as follows: "The term 'HIGHWAY' includes every way or place of whatever nature open to the use of the public, for the purpose of vehicular travel." Section 1.

Plaintiff, on the other hand, challenges the correctness of all of these contentions, and seriously argues that said definition of "highway" should be read into the 1928 act, as amended, and be given a controlling influence in its interpretation to meet the issue here discussed.

Section 3368 of the Revised Statutes, as amended by Act No. 220 of 1914, in part, reads as follows, viz.: "All roads in this State that have been opened, laid out or appointed by virtue of any act of the Legislature heretofore made, or by virtue of an order of any of the Police Juries in their respective parishes, or which have been, or shall hereafter be kept up, maintained or worked for a period of three years by authority of the Police Juries in their respective parishes, are hereby declared to be public roads."

It is clearly contemplated by this act that for a road to be a public one there must at least be some semblance of a dedication of a right of way therefor by the owner or the acquisition of such otherwise by the state or police jury, or, as regards parish roads, that such has been "kept up, maintained or worked for a period of three years" by authority of the police jury.

There are roads in the state which, although open to public traffic, are not public roads within the meaning of either the 1914, 1928, or 1932 acts. A road may be on private property, but, because of this fact, it would not be a public road, in legal contemplation and it may be closed at the will of the owner. Section 3, Rule 21 of the Highway Regulatory Act, Act No. 21 of 1932, recognizes this right. However, this act provides for the regulation of traffic thereon while open to the public. The Highway Regulatory Act itself, it seems to us, supports this line of reasoning. Its title begins: "An Act To provide for the regulation of traffic on the *public roads, highways* and *bridges* of this state." This same language also appears throughout the body of the act. A "highway," within the purview of this act, is not necessarily a public road, as defined by the 1914 act, but the converse of the proposition is not true; a public road is a highway.

The Highway Regulatory Act of 1928, No. 296, throws light upon this discussion. Its title begins: "To provide for the regulation of traffic on public highways of this State." "Highway" is defined therein as: "Every way or place of whatever nature open to the use of the public, *as a matter of right,* for purposes of vehicular travel. *The term 'highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons, colleges, universities or other institutions.*" Section 1. The italicized parts of this definition are omitted from the definition of "highway" in the 1932 act. The right of the state to exercise traffic regulatory jurisdiction over roads on private property and on land of public and private institutions is clearly recognized by the omission. It goes without saying that roads on private property and over the grounds of private institutions are not public roads, as commonly understood, nor as defined by section 3368 of the Revised Statutes, all of which means that the state, through its highway and police departments, may exercise traffic regulatory jurisdiction over roads and bridges which the 1928 act, as amended, clearly is not intended to cover. The bare fact of the right to regulate traffic on a particular road, or roadway, does not, per se, convert such into a public road or highway for the purposes of the 1928 act, as amended.

The Highway Regulatory Act contains no definition of the term "public road," presumably for the reason that the Legislature, by Revised Statutes, § 3368, as amended, had already defined it.

In Elliott v. Police Jury of Evangeline Parish, 15 La.App. 542, 132 So. 368, it was held that, "for roads to become 'public roads' under statutes, they must be maintained peaceably, without coercion against landowner, for three successive years by proper police jury. Rev.St.1870, §§ 2743,

3369, and section 3368, as amended by Act No. 220 of 1914."

The court, in Bomar v. City of Baton Rouge, 162 La. 342, 110 So. 497, 499, discussed section 3368 of the Revised Statutes, as related to the facts of that case, and, inter alia, said: "If a legal dedication is to be held under the evidence in this case, then every pig trail, by path, and neighborhood road in this state which has been used by the public without active protest of the owner of the soil *would be held to be a public road.*"

The necessary acts to constitute a public road, when there has been no formal dedication or right of way procured, are discussed and enumerated in Frierson v. Police Jury of Caddo Parish, 160 La. 957, 107 So. 709. It is therein held: "Road which was maintained as a public road by police jury, and worked from time to time by road gangs employed by police jury, and at times by prisoners, all under authority of police jury, for 3 years, subsequent to enactment of Rev.St. § 3368, as amended by Act No. 220 of 1914 became a public road by tacit dedication."

These cases clearly disclose the action precedent on the part of authority necessary to bring into existence a public road, as such. These decisions were rendered prior to the adoption of the 1932 Highway Regulatory Act; but the term "highway" is likewise defined, with some qualification, by the Highway Act of 1928, No. 296, which was in force when said decisions were rendered.

It is our conclusion that the term "public highways," in the sense employed in the 1928 act, as amended, means what the words obviously imply; that is, that the highway must be a public one as defined by the Legislature, the title to which may be either in the state, police jury, or other political subdivision of the state.

Acts of the character of that of 1928 derogate from the common rule that a defendant must be sued in the courts of his own domicile. Necessarily, they should be strictly construed. We so held in Day v. Bush, 18 La. App. 682, 139 So. 42, and in Spearman v. Stover, 170 So. 259.

The lower court, in passing on the plea, ventured to express grave doubt of the constitutionality of an act which would attempt to give the courts of the state jurisdiction personam, as the 1928 act does, where the collision did not actually occur on a public highway. We have the same doubt.

The right of the state to regulate traffic on public highways therein is the foundation basis upon which the constitutionality of such acts rest.

We are of the opinion that the plea to the jurisdiction was properly sustained. The judgment appealed from is affirmed, with costs.