THOMPSON, J.
 

 The plaintiff claims to be the owner of lot 16, square. 18 of Roseland Terrace within the corporate limits of the city of Baton Rouge. The lot is the extreme southeast corner lot 'Of said square 18, and measures 120 feet north and south by 40 feet east and west.
 

 The city admits the plaintiff’s ownership of the lot, except a space of some 20 feet, which is taken up by a street of said city which runs diagonally across said lot.
 

 It is alleged that this street is a public street of said city and is a continuation of a public road running through the parish of East Baton Rouge into the city., and known as the “Perkins road.” That said street or road has been property dedicated to the said parish and the said city by a legal dedication, and has been so used, continuously and without any objection or interruption, by the public generally and by the governing authorities of the city and of said parish of East Baton Rouge for more than
 
 75
 
 years.
 

 It is further alleged that the said road or street is presently used by the city and the public generally, and is under the control and so maintained by the said city.
 

 The claim of the city was sustained by the; district ;)udge, but on appeal the Court of Appeal reversed the judgment and gave plaintiff a judgment, holding that no legal dedication had been established.
 

 The lot in question formed a part of a forty-acre tract of land lying partly within and partly without the city limits as originally established.
 

 -In 1S98 the city limits were extended so as to include the whole of this tract of land, and in June,
 
 1910, the
 
 Zadok Realty Company, the then owner of the tract, subdivided the same into squares and lots separated by streets and avenues dedicated to the public use. The streets and avenues were designated and named on a map which the company caused to be made and recorded, and, as we understand, the said streets and avenues so dedicated have since that time been recognized and accepted by the city. The lot 16 appears on said map as before stated as the extreme southeast corner of the square 18, the said square having Olive street as its northern boundary and Ooldon Rod as its western boundary. There was an open space left on the east and south of said square, but no streets were named on said map as the eastern and southern boundary of said square.
 

 However, the limits of said square and said lot 16 were plainly designated on said map.
 

 This map did not show any road or street passing across this lot, but the evidence shows that the Perkins road ran across this lot and had been used by the public for some
 
 75
 
 years, and continued to be so used after the land had been brought within the city limits.
 

 The city also caused a map to be made in 1910, and this map shows the property in dispute as a road or street.
 

 There is a regular chain of title to the land, of which this lot 16 formed a part, from the government down to and including the purchase by the Zadok Realty Company.
 

 It is conceded that none of the deeds referred to made any mention or reference whatever to a public road running across any portion of this land. The only mention ever made of such a road was in the deed from the realty company to the plaintiff on March 25, 1919, in which deed appears this statement: •
 

 “It is well understood and agreed by and between the vendor and vendee herein that the
 
 *345
 
 Perkins road runs across a portion of the lot herein conveyed, and so much of said lot as is taken up by the said Perkins road as presently established is specially excepted from this sale.”
 

 On February 7, '1924, .the Zadok Realty Company made what is called a correction deed, in which it is declared that it was the intention of the said company to convey its entire interest in the said lot to the plaintiff, but without warranty as to that portion taken up by the said Perkins road.
 

 It is admitted in the evidence that this Perkins road running through the parish of East Baton Rouge and into the city of Baton Rouge, as presently used, has been used as such for more than 75 years by the public.-
 

 There does not appear in the record, however, any evidence tending remotely to show that any of the owners ever specially dedicated the land covered by said road to the public. Nor is there any evidence to show that the police jury of said parish ever laid out said road as a public road, or that said road was ever worked as a public road under and by authority of the police jury.
 

 Section 3368 of the Revised Statutes declares:
 

 “All roads 'in this state that have been opened, laid out or appointed by virtue of any act of the Legislature heretofore made, or by virtue of an order of any of the police juries in their respective parishes, are hereby declared to be public roads.”
 

 Section 3369 provides how public roads shall thereafter be laid out and established.
 

 In 1904, by Act 25, the Legislature amended -Civil Code, art. 765, relating to continuous and apparent servitudes, by declaring that:
 

 “The public, represented by the various parishes in this state, may also in like manner acquire a servitude by the open and public possession and use of a road for the space of ten years, after the said road or servitude has been -declared a public highway by the police
 
 jury.”
 

 Act 220 of 1914, amending section 3368 of the Revised Statutes, declares that all roads in this state that have been opened, laid out, or appointed by virtue of any act of the Legislature heretofore made, or by virtue of an order of any of the police juries, or which have been or shall hereafter' be kept up, maintained, or worked for a period of three years by authority of the police jury are hereby declared to be public roads.
 

 It is perfectly obvious that the two statutes quoted have no application to this case for the reason: (1) That the road in .question was never laid out and never worked by authority of the police jury as required by the said acts; and (2) because said acts were passed after the land in question had been brought within the city limits. Hence said acts have no reference or application to streets or roads within a municipality.
 

 The two acts have importance, however, as furnishing a legislative interpretation to the effect that prior to their passage no road in this state became or was to be considered as a public road which had not been laid out and worked as provided by law.
 

 But it is argued on behalf of defendant’s counsel that, conceding that the road was never legally laid out and never worked under authority of the police jury, the fact remains'that the road has been used as a public road for some 75 years and this amounts in law to a dedication to the public.
 

 It is true the courts have held that no particular form of dedication to public use is necessary, and that a dedication of a public road may be and sometimes is inferred from the conduct of the owners and their acquiescence in the use of such road by the public, but in all such cases it was held that the intent on the part of the owner to dedicate is absolutely essential and that such intent should clearly and satisfactorily appear.
 

 It has never been held, so far as we know, that the mere use of a road by the,traveling public without protest on the part of the owner of the land which such road traverses amounts in law to a dedication to the public.
 

 
 *347
 
 Thus, in Shreveport v. Drouin, 41 La. Ann. 872, 6 So. 657, it was held quoting from the body of the opinion:
 

 “Though no particular form be requisite, there must be a jDlain and positive intention to give and one equally plain to' accept. The positive assent of the owner and the actual use by the public for the public purposes intended by the appropriation, so as to render it unjust and injurious to reclaim the land, must be shown. And when the dedication is not express, but to be inferred from the acts or acquiescence of the owner and the use by the public, there must be such as to exclude every other hypothesis but that of dedication.”
 

 In the instant case there are no positive acts of an intent to dedicate shown on the part of the various owners. The only act relied on to infer an intention to dedicate and as evidencing an intention to appropriate is merely the silence of the owners and their failure to protest against the use of the public. Such silence and failure to protest does not in law amount to an assent to a dedication to public use.
 

 An entirely different situation might be presented if said owners had stood by and without opposition permitted the public authorities to lay out the road and to work the same as a public road.
 

 If a legal dedication is to be held under the evidence in this case, then every pig trail, by path, and neighborhood road in this state which has been used by the public without active protest of the owner of the soil would be held to be a public road.
 

 In McCearley v. Lemennier, 40 La. Ann. 253, 3 So. 649, there was, as in this case, no evidence to show dedication. The road was shown, however, to have been used by the public for 30 years, but the court held that such use by sufferance or tolerance of the owner had been declared to be insufficient to convert a private into a public road, citing Morgan v. Lombard, 26 La. Ann. 462; Torres v. Ealgoust, 37 La. Ann. 497.
 

 In De Grilleau v. Frawley, 48 La. Ann. 195, 19 So. 157, it was declared that:
 

 “A plain and positive intention to dedicate is an essential element of a dedication, and that intention must be shown by language or acts so clear as to exclude any other reasonable hypothesis, or, at least, to clearly convince the judicial mind [citing authorities].”
 

 The cases cited by the defendant do not announce any different principle from that stated in the cases from which we have quoted.
 

 As we have stated, as far back as 1910, the then owner of the land subdivided the same into squares and lots, separated by streets and avenues, and caused a plat to be made and duly recorded. The city presumabl3r accepted these streets and avenues as dedicated.
 

 The map did not show any road across lot 16. This fact, coupled with the fact that no reference to a road had been made in any of the numerous transfers of the property, shows conclusively, in our opinion, that the owner did not consider the space across the lot as dedicated to the public as a public road, but, on the contrary, evidenced an express repudiation of the fact of dedication.
 

 We do not regard the stipulation in the act of transfer to the plaintiff as having the effect of a dedication, or a recognition of such a dedication. It amounted at most to a reservation in the vendor of the ownership of the space covered by the road.
 

 It is clearly shown by the subsequent act of the vendor that it was the intention originally to convey the entire lot.
 

 Mr. Brown, a real estate dealer who represented the Zadok Realty Company in the sale to the plaintiff, stated as a witness that it was understood at the time of the sale to the plaintiff that in the course of time, whenever the road should be straightened out, which was practically a certainty at some time or other, that Bomar, the plaintiff, should have the whole lot.
 

 With the square in which the lot in question is located surrounded on all sides by public streets and avenues recognized and
 
 *349
 
 accepted by tbe city, it cannot be conceived and no reason is suggested in what way the city or tbe public can be better served by maintaining a street or road running diagonally across tbe lot, which admittedly destroys tbe commercial value of tbe lot. The logical and most reasonable and natural thing to do would be to straighten tbe road out in keeping with tbe plan of the subdivision.
 

 Even if tbe city were to succeed in its claim, it is not unlikely that tbe road would in tbe course of time be abandoned and tbe space of ground covered would immediately revert to tbe then owners of tbe abutting ground.
 

 Counsel can hardly be serious in tbe contention that tbe stipulation in tbe deed referred to was one pour autrui — for tbe benefit of the general public.
 

 We have already noted tbe fact that tbe stipulation from its very language was only a reservation of ownership of the space covered by the road, in favor of tbe vendor. It was not in terms expressed, nor could it reasonably be implied, either as a dedication or a recognition of a dedication.
 

 Tbe case relied on, Lawson v. Shreveport Waterworks Co., 111 La. 74, 35 So. 390, has no pertinent application to tbe facts of this case.
 

 In that case tbe owner of tbe soil over wbicb tbe road passed, in selling tbe soil, stipulated for tbe road to be kept open and a bridge constructed and maintained for its use over Blind bayou, wbicb stipulation tbe court held' could have meant nothing less than that tbe then existing status should continue.
 

 No such meaning can be attached to tbe stipulation in tbe instant case, for surely the reservation of tbe space covered by tbe road and its exception from tbe sale could by no means be construed as a stipulation that tbe then existing status should be maintained and said road continued for tbe benefit of tbe public.
 

 We think tbe Court of Appeal Ras correctly decided tbe ease, and that judgment is affirmed.
 

 ST. PAUL, J„ dissents.