851 So.2d 1006 (2003)
Arlen B. CENAC, Jr.
v.
PUBLIC ACCESS WATER RIGHTS ASSOCIATION, Jaromy Davaine, John King, Oray Savoie, Jr., Spence Cressionie, Andy Leboef, Gerald Matherne, Bryan Dufrene, Corky Dufrene, Robert Dufrene, Joe Toups, Billy Cressionie, Sr., Billy Cressione, Jr., Norris Sampay, Dally Breaux, Jr., Dean Breaux, Anthony ('Lil Tony') Martinez, Cody Martinez and Ron Oncale.
Melva Cressionie
v.
Arlen B. Cenac, Jr.
No. 2002-C-2660.
Supreme Court of Louisiana.
June 27, 2003.
*1008 Timothy C. Ellender, Jr., Conrad S.P. Williams, III, St. Martin & Williams, Houma, Counsel for Applicant.
C. Berwick Duval, II, Hon. Harry T. Lemmon, Clayton E. Lovell, William S. Watkins, Houma, Counsel for Respondent.
Burton P. Guidry, Slaughter, Hon. Richard P. Ieyoub, Attorney General, Counsel for Department of Justice, Attorney General, and State of Louisiana (Amicus Curiae).
Newman Trowbridge, Jr., Charles D. Marshall, Jr., David N. Schell, Jr., New Orleans, Counsel for Louisiana Landowners Association and Louisiana Land & Exploration Company (Amicus Curiae).
*1009 KIMBALL, Justice.[*]
In this case, we are asked to determine whether a privately owned boat launch and navigable canal have been impliedly dedicated to public use such that the property is now burdened with a servitude of use in favor of the public. After considering the evidence presented at trial, we conclude the evidence establishes only that the property has been used for a long period of time by the public with the permission of the owners. We find this evidence is insufficient to establish the requisite intent required for an implied dedication. For this reason, we affirm the judgment of the court of appeal.

Facts and Procedural History
On April 4, 2000, Arlen B. Cenac, Jr. ("Cenac") purchased from the Gheens Foundation ("the Foundation") a large tract of land known as Golden Ranch Plantation in Lafourche Parish. The tract included a portion of a canal, called Company Canal, and an adjacent boat launch and parking area. The canal connects Bayou Lafourche and Bayou Des Allemands and can be used to access Lake Salvador.
On October 19, 2000, Cenac filed a petition for injunction and damages against Public Access Water Rights Association ("PAWRA"), a local community association that seeks to preserve the fishing and water rights of the Gheens community, and several individuals,[1] alleging that on October 10, 11, and 17, 2000, he attempted to erect a security fence on his property and that PAWRA and the named individuals (hereinafter referred to collectively as "PAWRA") trespassed upon his property and prevented him from erecting the fence. Cenac requested a permanent injunction prohibiting PAWRA from engaging in acts that interfere with his use and enjoyment of the property.
Shortly thereafter, on November 22, 2000, Melva Cressionie ("Cressionie"), a resident of the Gheens community in Lafourche Parish, filed a petition for possession and injunctive relief against Cenac, claiming that she had possession of a real right in the form of a servitude of right of way and use to cross Cenac's property, park her vehicles on the area surrounding the boat launch, and use the boat launch to launch boats into Company Canal. Cressionie alleged she had consistently and peacefully used the boat launch and the area surrounding it for several years without objection from anyone. Cressionie further alleged that Cenac's attempt to erect a security fence around the boat launch and parking area prevented her from enjoying her real right. Cressionie requested that she be maintained in her possession and enjoyment of the real right and that an injunction be issued ordering Cenac to refrain from interfering with her access to the boat launch and parking area.
Subsequently, on November 29, 2000, Cenac filed a motion and order to consolidate the above cases, which was granted by the trial court. On that same date, PAWRA filed an answer and reconventional demand to Cenac's original petition, denying most of Cenac's allegations and asserting the named individuals have for years had corporeal possession of real rights in the form of a servitude of right of way and use to cross the property, to use the parking area and boat launch, and to launch boats into the canal. Like Cressionie, *1010 PAWRA claimed they had peacefully used the boat launch and the canal for several years without objection and Cenac's attempt to erect the fence constituted a disturbance of their possession of the servitude.
On January 2, 2001, Cenac filed a first supplemental and amending petition, asserting his ownership of the property at issue. Cenac requested a declaratory judgment that he owns and is in possession of the property and that PAWRA and Cressionie have not acquired a real right affecting his property. On January 17, 2001, Cressionie filed an answer and reconventional demand to Cenac's first supplemental and amending petition, contending the boat launch and surrounding area and the canal were impliedly dedicated to public use by Cenac's ancestors in title. Cressionie requested that the court issue a declaratory judgment that the public has acquired such a servitude and an injunction prohibiting Cenac from taking any action which would interfere with the public's servitude of use over the boat launch, parking area, and canal. On January 30, 2001, PAWRA filed an answer and reconventional demand to Cenac's first supplemental and amending petition, seeking inter alia a declaratory judgment that the public has acquired a servitude of use of the boat launch, parking area, and canal. Cressionie and PAWRA later added an alternative claim that the canal is a public canal, or has been formally dedicated for public use, or is a private canal subject to public use.
After a bench trial, the trial court entered judgment declaring Cenac the owner of the property in dispute. Furthermore, the trial court rendered judgment in favor of Cenac on the issue of the use of the boat launch and parking area and issued a permanent injunction barring Cressionie, PAWRA, and anyone acting on their behalf from launching, parking, or otherwise using the boat launch. Finally, on the issue of the use of the canal, the trial court rendered judgment in favor of Cressionie and PAWRA, declaring that Cenac's ownership of the canal is burdened by a servitude of use in favor of the public at large by virtue of implied dedication.
All parties appealed portions of the trial court's judgment to the court of appeal. The court of appeal affirmed the judgment of the trial court granting a permanent injunction as to the boat launch, but reversed the judgment of the trial court declaring that the canal was dedicated to the public use by implied dedication. Cenac v. Public Access Water Rights Ass'n, 01-1859 (La.App. 1 Cir. 9/27/02), 835 So.2d 560. Specifically, the court of appeal found that PAWRA and Cressionie failed to establish the plain and positive intent of the landowners to dedicate the canal and boat launch to public use. Id. at p. 14, 835 So.2d at 568.
We granted certiorari to examine the issue of implied dedication. Cenac v. Public Access Water Rights Ass'n, 02-2660 (La.1/31/03), 836 So.2d 78.

Discussion
The trial court's judgment declaring Cenac the owner of the boat launch[2] and canal has not been objected to and is not before us. Cressionie and PAWRA concede they have not acquired a servitude over the property at issue by acquisitive prescription. Moreover, they agree that the only method of dedication applicable to this case is that of implied dedication. Thus, the sole issue presented for our review is whether the boat launch and/or the *1011 canal were impliedly dedicated to public use such that Cenac's property is burdened with a servitude of use in favor of the general public.
Our legislature has never enacted a comprehensive scheme governing dedication to public use. St. Charles Parish Sch. Bd. v. P & L Inv. Corp., 95-2571, p. 4 (La.5/21/96), 674 So.2d 218, 221; Garrett v. Pioneer Prod. Corp., 390 So.2d 851, 854 (La.1980). The subject has thus been a controversial one. Garrett, 390 So.2d at 854. In the absence of such a comprehensive scheme, our courts have recognized four modes of dedication to public use: (1) formal, (2) statutory, (3) implied, and (4) tacit. P & L Inv. Corp., 95-2571 at p. 4-5, 674 So.2d at 221. Only implied dedication is at issue in this case.
Implied dedication is a common law doctrine, but it has been recognized by Louisiana courts since the nineteenth century. See id. at p. 5, 674 So.2d at 222. See also Municipality No. 2 v. Orleans Cotton Press, 18 La. 122 (1841) (citing City of Cincinnati v. White's Lessee, 31 U.S. (6 Pet.) 431, 8 L.Ed. 452 (1832)). No particular formalities are required to effectuate an implied dedication. 2 A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE, PROPERTY § 98, at 214 (4th ed.2001). Traditionally, because implied dedication lacks the formalities and safeguards of the other modes of dedication, the two indispensable elements of implied dedication required by the courts are "a plain and positive intention to give and one equally plain to accept." P & L Inv. Corp., 95-2571 at p. 5, 674 So.2d at 222 (quoting Carrolton Rail Rd. Co. v. Municipality No. Two, 19 La. 62, 71 (1841)). See also Humphreys v. Bennett Oil Corp., 195 La. 531, 197 So. 222 (1940); Bomar v. City of Baton Rouge, 162 La. 342, 110 So. 497 (1926); DeGrilleau v. Frawley, 48 La. Ann. 184, 19 So. 151 (1896); Town of Carrollton v. Jones, 7 La. Ann. 233 (1852); YIANNOPOULOS § 98, at 214. Thus, implied dedication requires an unequivocally manifested intent to dedicate on the part of the owner and an equally clear intent to accept on the part of the public.[3]
While traditionally the only requirements for implied dedication are the owner's plain intent to dedicate and the public's clear intent to accept, the additional requirement of maintenance by the municipality has sometimes erroneously been engrafted onto the concept of implied dedication. For example, in B.F. Trappey's Sons, Inc. v. City of New Iberia, 225 La. 466, 73 So.2d 423 (1954), this court stated in part:
The jurisprudence of this state appears to be well settled that where a street has been used and maintained by the city with the consent of the owner it creates an implied dedication of that street.
In the case of Ford v. City of Shreveport, 204 La. 618, 16 So.2d 127, it was pointed out that the doctrine of implied dedication is well recognized in this state. Implied dedication operates by way of estoppel in pais by acceptance and use on the part of the public with the consent of the owner. The theory of all the decisions is that if there is no formal or statutory dedication there may be dedication by implication consisting of the assent of the owner, by his silence or otherwise, the use by the public and maintenance by the municipality....
Id. at 469, 73 So.2d at 424 (internal citations omitted). This opinion appears to *1012 confuse tacit dedication, a dedication arising by operation of statute and involving public maintenance of a road or street for a specified period of time, with the concept of implied dedication at issue in the instant case. See generally YIANNOPOULOS § 98, at 216. The "summary" of implied dedication jurisprudence given in B.F. Trappey's Sons was quoted in Wyatt v. Hagler, 238 La. 234, 114 So.2d 876 (1959), another case more properly characterized as dealing with tacit dedication. More recently, in P & L Inv. Corp., this court, citing Wyatt, stated, "A dedication by implication consists of the assent of the owner, use by the public, and maintenance by the municipality." P & L Inv. Corp., 95-2571 at p. 5, 674 So.2d at 222. Although this court ultimately determined in P & L Inv. Corp. that implied dedication did not apply and a tacit dedication of the road at issue had been made, the opinion appears to have perpetuated the confusion between tacit and implied dedication. The jurisprudence suggesting that maintenance by the municipality is required before an implied dedication can be made is an aberration in our law. As explained above, all that has traditionally been required for an implied dedication is an unequivocally manifested intent to dedicate on the part of the owner and an equally clear intent to accept on the part of the public. While maintenance by the municipality might be a factor in determining whether an implied dedication has in fact been made, it is not required. Any language in our prior cases suggesting such a requirement is erroneous and hereby repudiated.
The weight of authority establishes that an implied dedication gives rise to a servitude of public use and does not transfer ownership. Id. at p. 6, 674 So.2d at 222; Arkansas-Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229, 240 (1938); James v. Delery, 211 La. 306, 29 So.2d 858 (1947). See also YIANNOPOULOS § 98, at 217; 11A EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 33.68 (3rd ed.2000).
The burden of proving the implied dedication falls upon the party asserting the dedication. Jones, 7 La. Ann. at 235; Drabik v. Town of East Lyme, 234 Conn. 390, 662 A.2d 118 (1995); State ex rel. Haman v. Fox, 100 Idaho 140, 594 P.2d 1093 (1979); Derby Heights, Inc. v. Gantt Water & Sewer Dist., 237 S.C. 144, 116 S.E.2d 13 (1960); MCQUILLIN § 33.11. The question of intent to dedicate to public use is one of fact. Donaldson's Heirs v. City of New Orleans, 166 La. 1059, 1063, 118 So. 134, 135 (1928). See also Mihalczo v. Borough of Woodmont, 175 Conn. 535, 400 A.2d 270 (1978); Viscardi v. Pajestka, 576 S.W.2d 16 (Tex.1978); Cooper v. City of Great Bend, 200 Kan. 590, 438 P.2d 102 (1968). The factual findings of a trial court should not be set aside by a court unless they are manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In the instant case, Cenac argues PAWRA is prevented from acquiring a servitude of use over the boat launch and canal by the provisions of La. R.S. 9:1251. PAWRA, on the other hand, contends the provisions of the statute do not apply to prohibit a landowner from creating a servitude of use by implied dedication. The trial court found the statute applied to prohibit the creation of a public servitude of use over the boat launch, but did not apply to the canal.
Entitled "Passage to or from waters or recreational sites; servitudes or rights of way or passage not acquired," La. R.S. 9:1251 provides:
A. Any other provisions of the laws of this state to the contrary notwithstanding, whenever any land owner voluntarily, whether expressly or tacitly, permits passage through or across his land by *1013 certain persons or by the public, solely for the purpose of providing a convenience to such persons in the ingress and egress to and from waters for boating, or for the purpose of ingress and egress to and from any recreational site, neither the public nor any person shall thereby acquire a servitude or right of passage, nor shall such passage become a public road or street by reason of upkeep, maintenance, or work performed thereon by any governing authority.
B. The provisions of this section shall not be construed to:
(1) prohibit land owners from entering into enforceable contracts specifically granting servitudes or rights of way or passage;
(2) prohibit land owners from specifically dedicating roads, streets or passages to the public use;
(3) repeal any laws relative to expropriation or appropriation of land or servitudes or laws authorizing the legislature or governing authorities to open, lay out or appoint public roads or streets; nor
(4) repeal any laws creating servitudes along rivers, streams or other waters.
This statute was enacted in 1958 by Act No. 463 and has not been amended since its enactment.
We agree with the trial court that La. R.S. 9:1251 applies to the boat launch, but not to the canal. By its own terms, the statute applies to land used as a passage to reach waters for boating. It does not apply to prevent the acquisition of a servitude over the waters of the canal. The clear language of subsection (A) prohibits the public from acquiring a servitude when the owner voluntarily permits the public to pass through or across his land for convenient access to and from a recreational site or a body of water for boating. Subsection (B)(2), however, makes it clear that subsection (A) shall not prohibit land owners from specifically dedicating passages to public use. Thus, if the owner has unequivocally manifested an intent to dedicate his land used to access waters for boating and the public has clearly accepted, then the provisions of La. R.S. 9:1251(A) do not apply to prevent the public from acquiring a servitude over the owner's land.
Like the boat launch, the canal is owned by Cenac. It is a private thing subject to dedication to public use, as are roads and streets. YIANNOPOULOS § 79. Although the canal is navigable, this fact alone does not render it public. Id.; Brown v. Rougon, 552 So.2d 1052 (La.App. 1 Cir.1989), writ denied, 559 So.2d 121 (La.1990); National Audubon Soc'y v. White, 302 So.2d 660 (La.App. 3 Cir.1974), writ denied, 305 So.2d 542 (La.1975). In this case, the uncontroverted evidence reveals that when the canal was built, it did not divert any natural stream or water body. Thus, the privately owned canal is burdened with a servitude of public use only if Cressionie and PAWRA prove the existence of an implied dedication.
Taking all of the above into consideration, we find that if the boat launch has been impliedly dedicated to public use, then La. R.S. 9:1251 does not prevent the public from acquiring a servitude over the boat launch. Likewise, because the terms of La. R.S. 9:1251 do not apply to the canal, if the canal has been impliedly dedicated to public use, then the public has acquired a servitude over that portion of Cenac's property. The sole question presented, then, is whether the boat launch and canal have been impliedly dedicated to public use such that the public has acquired a servitude of use over Cenac's property.
*1014 The plain and positive intent to dedicate must be shown by language or acts so clear as to exclude every other hypothesis but that of dedication. Bomar, 162 La. at 347, 110 So. at 499 (quoting Shreveport v. Drouin, 41 La. Ann. 867, 6 So. 656 (1889)); DeGrilleau v. Frawley, 48 La. Ann. at 195, 19 So. at 157. The proof needed to establish an implied dedication has been accurately stated as follows:
Ownership of land once had is not to be presumed to have been parted with, but the acts and declarations relied on to show a dedication should be unequivocal and decisive, manifesting a positive and unmistakable intention, on the part of the owner, to permanently abandon his property to the specific public use. If they are equivocal, or do not clearly and plainly indicate his intention to permanently abandon the property to the public, they are not sufficient to establish a dedication. The intention to dedicate must clearly appear, though such intention may be shown by deed, by words, or acts. If by words, the words must be unequivocal, and without ambiguity. If by acts, they must be such acts as are inconsistent with any construction, except the assent to such dedication.
Brusseau v. McBride, 245 N.W.2d 488 (S.D.1976) (quoting Cole v. Minnesota Loan & Trust Co., 17 N.D. 409, 117 N.W. 354 (1908)).
While recognizing that a plain and positive intent to dedicate must be proved, Cressionie and PAWRA assert that the owner's mere toleration or acquiescence of continuous use on the part of the public is sufficient to establish an intent to dedicate. Louisiana jurisprudence does contain some language suggesting that long use by the public is sufficient to establish an implied dedication. See e.g. Emery v. Orleans Levee Bd., 207 La. 386, 21 So.2d 418 (1945). These cases, however, have been criticized by the doctrinal writers and are contrary to the majority of decisions handed down by both Louisiana and common law courts. The majority of our cases establish the principle that continuous use by the public alone is insufficient to establish the requisite intent. See e.g. Kohn v. Bellott, 169 La. 352, 125 So. 269 (1929); Donaldson's Heirs, 166 La. at 1063, 118 So. at 135; Bomar v. City of Baton Rouge, 162 La. at 346, 110 So. at 499; Torres v. Falgoust, 37 La. Ann. 497 (1885). Professor Yiannopoulos, a leading commentator, has explained:
[D]ecisions establishing an implied dedication by the toleration of public use are extremely rare and may be explained on other grounds, such as estoppel vis-à-vis the public authorities. The jurisprudence is well settled that immemorial use by the public does not alone establish dedication.
YIANNOPOULOS § 98, at 215 (footnotes omitted).
Common law jurisdictions similarly reject the idea that mere toleration or acquiescence on the part of the owner is sufficient to establish intent to dedicate. The general rule has been summarized as follows:
The fact that an owner permits the public to use the land as a way, without more, will not constitute an intention to dedicate. A temporary right to use a private way is in the nature of a mere license, revocable at pleasure, and does not in any sense establish the requisite intent. Accordingly, mere permissive use of land as a street or the like, where the user is consistent with the assertion of ownership by the alleged dedicator, does not, by itself, constitute a dedication nor demonstrate a dedicatory intention. In other words, the mere fact that private property is used by the public is not necessarily inconsistent with the absence *1015 of an intent to dedicate it to the public.
MCQUILLIN § 33.32 (footnotes omitted). We believe this is a correct expression of the law based on the unequivocal nature of the proof necessary to show a plain and positive intent to dedicate. We therefore conclude an owner's toleration of and acquiescence in long and continuous public use of his land, without more, is insufficient to establish a plain and positive intent to dedicate.
The evidence adduced at trial in the instant case showed that the public had been using both the boat launch and the canal for at least 60 years. During this time period, the prior owners of the canal, Mr. and Mrs. Gheens and, later, the Gheens Foundation, had knowledge of the public's use and never interfered when the public used the boat launch and the canal for passage into Lake Salvador. Melva Cressionie, one of the parties who lives across the highway from the boat launch, testified she never asked permission to use the boat launch and the canal because she thought they were public. She also testified that Mr. Taylor, a general manager of Golden Ranch Plantation, told her the boat launch was public. Other members of the public testified regarding their long use of the boat launch and canal and their understanding that the property was public. There was also testimony that the sheriff's office, the fire department, and an ambulance used the launch and canal in emergency situations.
Cressionie and PAWRA also presented evidence regarding maintenance of the boat launch and canal. Evidence was presented that some members of the community performed minor acts of maintenance around the boat launch such as placing shells in the holes made by vehicles using the launch, picking up trash, and installing steel cleats used to tie up boats. Additionally, evidence was presented that the Army Corps of Engineers sprayed the canal to keep it free of aquatic vegetation that would prohibit navigation. Ray Blouin, an inspector for the Army Corps of Engineers, testified the Corps was maintaining the canal when he began his job there in 1975. He also testified that the canal was generally sprayed from March or April through December of every year. A document was entered into evidence that showed the Corps sprayed the canal 27 times from August 1995 through May 1999. Mr. Blouin testified that he knew of no objection to the spraying by the owners. Finally, Mr. Blouin testified that while it is not the practice of the Corps to spray private canals, if the public used the canal, the Corps would spray it unless it was gated under lock and key. The parties stipulated that Mr. Russell Savoie, if called to testify, would state that he worked for the Parish of Lafourche and had done some spraying in the canal in the course of his employment.
Finally, testimony was presented that the parking area around the boat launch had been enlarged by the owners because they had liability concerns about the cars parking on the side of the highway when the parking area was full.
Cenac offered evidence and testimony purporting to show the owners' efforts to maintain the launch and canal as private. The record contains evidence that the previous owners placed signs at the boat launch and canal indicating that the property was "private" and "posted." Mr. Herman Robichaux, former general manager of Golden Ranch Plantation, testified he began working for the Gheens family in 1963 and posted and maintained private property signs at the boat launch and canal beginning around 1968. He testified the canal itself, including its points of entry and exit, were posted with private property signs. Mr. Robichaux stated he *1016 was always instructed by the owners to maintain the boat launch and canal as private. Mr. Robichaux testified his standing orders were that no public funds be spent on the property. He also testified that he ejected trespassers, commercial fisherman, and hunters from the canal. Criminal proceedings were sometimes instituted against people to keep them out of the canal. Mr. Robichaux testified the Foundation received a permit from the Army Corps of Engineers to conduct a marsh management project on the north side of the canal and spent about $120,000 completing the project. The Corps did not contribute any money to the project. Mr. Robichaux further testified that Foundation employees maintained the boat launch.
Additionally, Mr. Lanny Ledet, the property manager employed by Cenac, testified he recalled seeing signs asserting the private nature of the property around the boat launch and canal since his employment in 1987. Mr. Forrest Travirca, a security agent for Golden Ranch Plantation, also testified he saw the signs posted along the boat launch and canal. Because of the signs, he asked for and was granted permission to use the launch to reach his camp on Lake Salvador and, later, for use by his scout troop. He initially sought permission from the general manager, Mr. Taylor, but was told it was more appropriate to ask Mrs. Gheens directly for permission to use the property.
Mr. Donald Doyle, Vice-President of the Gheens Foundation and former attorney of Mr. and Mrs. Gheens, testified that both Mr. and Mrs. Gheens were very strict "relative to any use of the property that might in any way compromise their ownership or their right to exclusive use of the property." Mr. Doyle stated that the Gheens were against governmental work being done on the property without their permission and his instructions were that the parish should not be allowed to put shells at the launch. He testified that the public was given permission to use the boat launch and canal in an effort to be neighborly, but there was never any intention to grant the public any rights in the property. He also testified that when the Foundation sold the property to Cenac, it was the Foundation's intent to transfer the boat launch and canal to him free of any servitudes or right of public use.
Finally, evidence was presented to show that Mr. and Mrs. Gheens and the Foundation entered into various hunting leases with members of the public and allowed those persons to use the boat launch and canal in connection with the leases. Testimony at trial indicated that when large hunting groups were using the property, those groups were given a key to the "private boat launch" across the canal as the launch at issue was too crowded. Additionally, a letter purporting to show a draft of an agreement between Golden Ranch Plantation and the Gheens Jaycees was admitted into evidence. The letter indicated an agreement "for operation of the boat ramp," which provided that the Jaycees would keep the launch area clean, complete minor maintenance, and "monitor the use of the boat launch, prohibit use by the general public, insure availability of the facilities for the local community, and inform the Golden Ranch of any conflicts." The proposed agreement ended with the statement that Golden Ranch "reserves the right to prohibit anyone from using the facilities."
After considering the above evidence, the trial court found there was no evidence that anyone ever interfered with the public's use of the boat launch or canal. The trial court found the evidence showed the signs posting the property as private had been there for at least 30 years. The trial court determined that the Gheens family and the Foundation granted *1017 the community permission to use the launch and this permission has existed for at least 50 years. With regard to maintenance, the trial court found the Corps had done some spraying, but had not spent overwhelming amounts of money maintaining the canal. The trial court stated, "The evidence of maintenance is sketchy and in this case, I don't think significant." The trial court concluded the Gheens family did not allow hunting from the canal or its banks and did not allow air boats in the canal. With regard to the navigable canal, the trial court found tolls were charged for its use in its early years of existence. The trial court found there were never any written acts dedicating the canal or the launch to the public. Finally, the trial court found that the possession of the public has always been with the permission of the owner, or precarious.
After making these findings, the trial court found that La. R.S. 9:1251 applied to prohibit the public from acquiring a servitude of use over the boat launch and canal. It does not appear the trial court considered whether the provisions of subsection (B)(2) applied to allow specific dedication to public use; rather, the trial court considered the provisions of subsection (A) and determined the public was prohibited from acquiring a servitude of use over the boat launch. The trial court, however, noted that the statute was enacted in 1958 and was not retroactive, so it considered the evidence to determine whether there was any intent to dedicate the property to public use prior to 1958 and concluded the evidence was insufficient to show the owners had a clear intent to dedicate the launch to the public.
With regard to the canal, the trial court concluded the central question to be determined was the purpose for which the canal was built. Because it found the canal was built for navigation and has been used for navigation by the public for many years, it found the canal was impliedly dedicated to public use. The trial court did not, however, make any finding regarding the intent of the owners to dedicate the canal to public use. The trial court therefore legally erred in that it applied the wrong test to determine whether, in fact, an implied dedication of the canal had been established.
After reviewing the evidence presented in this case, we find the trial court was reasonable in concluding there is no evidence that any owner prior to Cenac interfered with the public's use of the boat launch and canal and that the canal was built for navigation and has been used by the public for many years. This evidence of mere toleration or acquiescence on the part of the owners, however, is not by itself sufficient to support a finding of implied dedication to public use. Because the trial court erroneously failed to consider whether the previous owners unequivocally manifested a plain and positive intent to dedicate the boat launch to public use after 1958 and whether the requisite intent was present with respect to the canal, we must review the record to determine whether such an intent was proved by Cressionie and PAWRA.
After a thorough review of the record and after considering the findings of fact made by the trial court, we find Cressionie and PAWRA failed to prove a plain and positive intent to dedicate by language or acts so clear as to exclude every other hypothesis but that of dedication. The evidence reveals that Mr. and Mrs. Gheens, and, later, the Foundation, took pains to ensure the property at issue remained private property not subject to any rights in favor of the public. While maintenance by the public is a factor in determining whether an implied dedication has been made, we agree with the trial court that the amount of maintenance provided by the public was somewhat "sketchy" *1018 considering the long period of time over which the property was used by the public. The record revealed that although the public provided minor maintenance, the owners did not turn over the maintenance of the property to the public, but continuously retained the responsibility to maintain the property. They gave instructions to their employees that no public funds were to be spent on their property. The minor maintenance provided by the public in this case is, by itself, insufficient to establish a plain and positive intent on the part of the owners to dedicate their property to public use.
The testimony of former employees of Mr. and Mrs. Gheens and the Foundation and that of the vice-president of the Foundation shows that the boat launch and canal were considered private by the owners and that they had no intention of dedicating any portion to the public. They posted signs at the launch and the canal, including its points of entry and exit, asserting the private nature of the property. They gave explicit permission to use the boat launch and canal to those who requested it. Although they gave the public permission to use the launch and canal, the evidence reveals they intended to retain the ability to revoke this permission and exercised this ability when people used the canal in an unapproved manner. The fact that the owners enlarged the parking area around the boat launch and repaired the launch itself is not inconsistent with their private ownership of the property and their decision to allow the public to use the property as long as their permission was given. Furthermore, the Foundation made no attempt to acknowledge any right of the public to the boat launch and canal when it sold the property to Cenac, although other servitudes were mentioned. Mr. Doyle testified that it was the Foundation's attempt to transfer ownership of the property free of any servitudes of use in favor of the public.
In light of the above, we find Cressionie and PAWRA have not presented evidence sufficient to show a plain and positive intent to dedicate by actions so clear as to exclude every other hypothesis but that of dedication. Instead, the evidence presented shows that the public was allowed to use the boat launch and canal for the purpose of traveling to other bodies of water for many years with the permission of the owners. This permissive use does not establish a plain intent on the part of the owners to permanently abandon the property to public use. Thus, like the court of appeal, we find neither the boat launch nor the canal is burdened with a servitude of public use established by implied dedication.

Decree
The judgment of the court of appeal, which affirmed the judgment of the trial court granting a permanent injunction as to the boat launch and reversed the judgment of the trial court declaring the canal to be dedicated to the public use by implied dedication, is affirmed.
AFFIRMED.
WEIMER, J., dissents and assigns reasons.
WEIMER, J., concurring in part and dissenting in part.
This matter involves a unique set of facts.
The small community of Gheens is located in an isolated area of a rural portion of Lafourche Parish. There is but one highway serving the community. One cannot drive through Gheens destined for anywhere else.
For decades and generations, the Company Canal provided the only navigable waterborne artery of ingress and egress to the area. The Company Canal was built by a joint public/private endeavor specifically *1019 for the purpose of navigation. Although the canal became private and tolls were charged at certain locations in the distant past, the record is clear that the portion of the Company Canal which connected the area where the community of Gheens is located was always utilized by the public as a waterborne thoroughfare.
In 1929 and 1930, C.E. Gheens purchased the Golden Ranch Plantation, which included the portion of the Company Canal at issue. Upon his death, his widow acquired title to the plantation. When she died in 1982, the Gheens Foundation became the owner of the plantation, including the canal and the land surrounding the canal. The evidence is clear the Gheenses always allowed the public to use the canal for travel. Prior to highways, waterways were virtually the only means of travel. The Gheenses apparently had a symbiotic, paternal relationship with the community that bore their name. So long as individuals used the canal as a means of transportation, that use was acceptable. Hunting, fishing, air boat use, and docking vessels in the canal were not tolerated; but navigation through the canal was not just permitted, it was encouraged. The encouragement did not come only in the form of allowing use of the canal. The Gheenses also built a boat launch, referred to as the "public boat launch," for the use of the public and later enlarged the boat launch, which further encouraged the use of the canal. In sharp contrast to this public boat launch is the so-called "private boat launch," located directly across the canal, that the Gheenses built for their own use.
At issue in this matter is whether there exists an implied dedication in favor of the public to use the canal and the boat launch. As explained by Professor Yiannopoulos, "[A]fter much litigation, it became settled that dedication to public use may be accomplished without any express or written act. This mode of dedication came to be known, in contradistinction with formal dedication, as `implied dedication.'" 2 A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE: PROPERTY § 98 at 210 (1999).
Professor Yiannopoulos further states:
The essential feature of implied dedication is the absence of requisite formalities. However, there must be, "a plain and positive intention to give and one equally plain to accept." Thus, the two indispensable elements of implied dedication are: proof of a positive intent to dedicate, frequently qualified as "offer", and proof of acceptance by the public. The offer may be implied from facts or acts of the owner that exclude any other rational hypothesis except an intent to dedicate and the acceptance may be inferred from actual use of the property by the public. The very idea of implied dedication was borrowed from common law jurisdictions; and, for this reason, implied dedication is also known as "common law" dedication. Louisiana courts have frequently relied upon common law authorities to support propositions concerning the incidents and effects of this mode of dedication. Cases are legion. [Footnotes omitted.]
YIANNOPOULOS at 210-211.
While I am extremely reluctant to engraft a so-called common law concept such as implied dedication into our civil law system, it is clear that this concept has been fully adopted by the jurisprudence. See YIANNOPOULOS at 210 n. 6.[1] Sanctioned by the experience of ages, the common law doctrine of implied dedication *1020 rests on public convenience. 26 C.J.S. Dedication § 2, at 280 (2001), citing Jack v. Fontenot, 236 So.2d 877 (La.App. 3 Cir. 1970). The doctrine is based on public policy and good faith, securing to the public only rights it has honestly enjoyed or depended upon, but taking nothing from the landowner that was not intended to be given. 26 C.J.S. Dedication § 2, at 280. The right conferred by common law dedication is a mere easement (or servitude), as contrasted with a statutory dedication that vests title in the public entity to which the dedication is made. Id., citing Jefferson Parish v. Doody, 247 La. 839, 174 So.2d 798 (1965).
Further, despite its long history of being jurisprudentially recognized, the legislature has not abrogated the concept of implied dedication except in a limited situation. That situation involves a landowner allowing the use of his property to enable the public to get to a waterway. To encourage a landowner to allow such use, the legislature has expressed that such permissive use does not result in the establishment of a servitude. See LSA-R.S. 9:1251. I agree with the trial judge, the court of appeal, and the majority that LSA-R.S. 9:1251 acts to prevent a servitude from being established at the boat launch despite the public's use of the boat launch. For the public to acquire such a right of use, the landowner must specifically grant a servitude of passage or such must be purchased or acquired through expropriation. However, I believe a different result is compelled with respect to the canal.
From a civil law perspective, the concept of an implied dedication merely gives force and effect to the will of the parties based on the grantor's offer to donate and the grantee's acceptance of that offer. See LSA-C.C. art. 454[2]; See also LSA-C.C. art. 455[3] and comments. The acts of the donor manifest an intent to dedicate. 26 C.J.S. Dedication § 58, at 358.
Mr. Cenac and amicus on behalf of the Louisiana Landowners Association, Inc. express concern that the benevolence of a landowner, who tolerates use by the general public, should not be punished with the loss of ownership rights to his property. I agree. Mere tolerance of use by the general public is not enough to result in the loss of ownership rights. There must be an intent to give on the part of the benefactor. The law is not insensitive to the rights of property owners and recognizes that a servitude, being a restraint on the use of property, is generally not favored. See, Brown v. Rougon, 552 So.2d 1052, 1058 (La.App. 1 Cir.1989), writ denied, 559 So.2d 121, (1990), citing LSA-C.C. art. 730, cmt. (b).[4] However, in this *1021 case, there was enough evidence for the trial judge to find an intent to dedicate a right of use. This matter does not involve a taking of private property for public use. Rather, this matter involves voluntarily relinquishing rights. A private landowner should not have his property taken simply because he benevolently allows the public to use his property. However, a landowner can intentionally transfer a right of use.
Professor Yiannopoulos has appropriately summarized the law as follows:
Courts have declared on several occasions that "it suffices that the owner permits the land to be used by the public with the intention of making the dedication." However, decisions establishing an implied dedication by the toleration of public use are extremely rare and may be explained on other grounds, such as estoppel vis-a-vis the public authorities. The jurisprudence is well settled that immemorial use by the public does not alone establish dedication.
YIANNOPOULOS at 211.
The critical issue regarding the canal is whether there was adequate proof of a positive intent to dedicate. Mr. and Mrs. Gheens are no longer living, so their intent cannot be questioned directly. Rather, we must evaluate their acts to determine their intent. Particular acts of an owner which may be admitted in evidence as manifesting an intent to dedicate property to public use include making a canal through the property for general use and allowing maintenance at public expense. 26 C.J.S. Dedication § 58, at 358. However, as the court of appeal noted in the instant case, silence or acquiescence alone is generally insufficient to establish the unequivocal and positive intent necessary to find an offer to dedicate to public use. Cenac v. Public Access Water Rights Association, XXXX-XXXX, p. 10 (La.App. 1 Cir. 9/27/02), 835 So.2d 560, 565.
Not one shred of evidence indicates that the Gheenses ever closed or intended to close the canal to waterborne traffic other than restricting the use of air boats. To the contrary, the evidence establishes they took steps to promote the use of the canal, even expanding the boat launch when it became overcrowded. I suggest the evidence indicates Mr. and Mrs. Gheens would not tolerate depriving their rural neighbors, who had used the Company Canal for generations as a means of travel to reach public waterways to fish, hunt, trap, and provide for their families, of the use of this canal.
Additionally, the canal was sprayed with herbicides at public expense to prevent the growth of water hyacinths. While maintenance by the public is not a requisite for implied dedication, it is a factor to be considered. See 26 C.J.S. Dedication § 58, at 358; compare, LSA-R.S. 48:491[5]. At trial, Ray Blouin, an Army Corps of *1022 Engineers inspector in the aquatic growth control unit, testified the Corps has sprayed the portion of the canal at issue in this case to keep it free from aquatic vegetation. Spraying was done from March or April through December of each year. He estimated that the canal had been sprayed by the Corps "in-house" for at least twenty years prior to 1995 when the Corps began contracting with private contractors to do the actual spraying. One such contract indicated the canal had been sprayed approximately 27 times from 1995-1999. The Corps maintains waterways that are used by the public to keep the waterways unclogged and navigable. Although the trial judge acknowledged the canal had been sprayed by the Corps, he indicated the expense to the public had not been monetarily significant. However, the evidence established that the maintenance was substantial and occurred over a long period of time. Without this spraying, which the evidence indicated had occurred numerous times, the canal would have long ago become clogged and non-navigable. The evidence established that the owners of the canal knew about the spraying.
Members of the Gheens community testified that for generations the canal was used by them and their ancestors. No one ever sought permission to use the canal; their use of the canal was never restricted. Understandably, they believed a right to use the canal had been established.
Two witnesses associated with the Gheenses testified no one was denied use of the canal so long as it was used as a thoroughfare. Herman J. Robichaux, Jr. testified he had worked for the Gheenses in one capacity or another since 1963. During questioning, he conceded it was trespassing on the property which caused him to intervenenot the use of the canal. He acknowledged the public had unrestricted access to the launch and canal to get to Lake Salvador during his employment.
Forrest Travirca was under contract to provide security for the Gheens Foundation since 1994. He was employed as a wildlife and fisheries enforcement agent from 1983 to April 1, 1999. He testified at trial regarding his actions in ejecting people from the property and the canal. He testified as follows:
There was (sic) two individuals, while I was engaged in patrolling the properties, that I observed in the Company Canal engaged in hunting. The people were previously advised that that type of activity was not allowed in the Company Canal. They could traverse the Company Canal going to and from however, they could not hunt in the Company Canal. [Emphasis added.]
When questioned as to whether there was ever any intent on behalf of Mr. Gheens to dedicate either the canal or the boat launch to public use, Donald Doyle, the attorney for Mr. and Mrs. Gheens and the Gheens Foundation, testified as follows:
There was a feeling that within the community of Gheens, which was a small community at the time. There were people who did trapping on the property and there were some families that owned camps out on Lake Salvador. And that there was no reason why, as long as they obeyed the general rules about maintaining the property and not throwing trash, and debris, and garbage in it, that they could use it to go to their camps. [Emphasis added.]
Doyle further testified it was his understanding the people using the boat launch and canal were using it with the permission of the owners. On cross examination, Doyle responded, "[T]he type of use that we did not object to and thought that it was a perfectly neighborly thing for us to *1023 do was to accord to the community the right to use the canal." He also acknowledged on cross examination that there had been no objection to the spraying of the canal done by the Corps.
The learned trial judge heard the evidence and observed the witnesses. Although he did not make a specific finding regarding the intent to dedicate, his judgment was that the canal remain open to the public for navigation.[6] The trial judge found "the canal is subject to an implied dedication to public use." In reasons for judgment, the trial judge stated:
Certainly, the Gheens family and the foundation were interested in making certain that people who used the canal did not do so for illegal purposes. There were no efforts suggested by the evidence that the Gheens family at any time restricted or attempted to restrict the use of the canal by anyone or to any special group or category of persons.
...
If there's one thing that the facts in this case show, that can not be contradicted or avoided, is that the canal was built for navigation. And the difference between this case and all of these other cases cited on the issue of the canal is that it was built for navigation. There is no evidence that the state or any of the owners in this case have ever attempted to block the canal or interfere with it[s] use. Even though over a period of time the canal has gone through periods where it may have been silted up in spots, where they didn't know who the owner was, where the owner was bankrupt, or the owner was a wealthy person, Mr. Barrow, who nobody liked. None of that has anything to do with the use for which the canal was built or the use to which it has been put for the 100 plus years that it has been in existence.... [I]f any case fit[s] the implied dedication of public use for a canal, if the facts of any case fit it, it is this case. Because the facts in this case are overwhelming about why it was dug, why it was built, and the use for which it was put. So my finding in this case is that there has been over a period of time, even if you take the period of years from the time that the Gheens family took ownership, that there has been an implied dedication to use of this canal by the owners that affects the title of Mr. Cenac. And as a result of that, there has been created a servitude of use in favor of the public to the Company Canal.
In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard which precludes the setting aside of a trial court's finding of fact unless those findings are clearly wrong in light of the record reviewed in its entirety. Rosell v. ESCO, 549 So.2d 840 (La.1989). A reviewing court may not merely decide if it would have found the facts of the case differently, the reviewing court should affirm the trial court where the trial court judgment is not clearly wrong or manifestly erroneous. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112, p. 8 (La.7/5/94), 639 So.2d 216, 221.
As previously indicated, Mr. and Mrs. Gheens and then the Gheens Foundation allowed the use of the canal for transportation for generations. Testimony at trial indicates the Gheenses utilized significant efforts to prevent trespassers, but allowed *1024 and encouraged travelers. Despite occasional problems with trespassers and poachers on the property, the Gheens family never attempted to curtail the use of the canal for travel from one point to another. Members of the community testified they believed a right to use the canal had been established.
The trial judge did not find the right of passage exists merely because the canal was navigable. The trial judge found "an implied dedication to use of this canal by the owners.... [T]here has been created a servitude of use in favor of the public to the Company Canal." There was no evidence to contradict the fact that the canal was always intended to be used for navigation.[7] The evidence clearly establishes that no one was ever prevented from using the canal so long as the canal was used as a highway for travel.
The evidence indicates the canal provided a link to other navigable waterways used for commercial as well as recreational purposes. The canal has a long history of being an artery of commerce. The Gheenses never intended the closure of the canal to the public which would have a detrimental effect on the lives of the residents of this small community of Gheens and the public at large.
As stated in the beginning, this matter involves a unique set of facts. Because of the unique facts of this case, I believe there is sufficient evidence to establish that the trial judge was correct in his assessment that a limited servitude of passage was established.
I do not agree that the trial court committed legal error in applying the wrong test to determine whether an implied dedication of the canal has been established or that the trial court was manifestly erroneous in its findings of fact. I would reverse the decision of the court of appeal and reinstate the judgment of the trial court.
NOTES
[*] Retired Judge Robert J. Klees, assigned as Justice ad hoc, sitting for Associate Justice Chet D. Traylor, recused.
[1] The individuals named as defendants in Cenac's original petition are Jaromy Davaine, John King, Oray Savoie, Jr., Spence Cressionie, Andy LeBoeuf, Gerald Matherne, Bryan Dufrene, Corky Dufrene, Robert Dufrene, Joe Toups, Billy Cressionie, Sr., Billy Cressionie, Jr., Norris Sampay, Dally Breaux, Jr., Dean Breaux, Anthony ('Lil Tony') Martinez, Cody Martinez, and Ron Oncale.
[2] For ease of reference, we will refer to the boat launch and its surrounding area, including the parking lot, as the "boat launch."
[3] An implied dedication has also been found when the owner of a tract of land subdivides the tract into lots, designates streets or roads on a map, and thereafter sells the property or any portion of it with reference to the map. P & L Inv. Corp., 95-2571 at p. 5-6, 674 So.2d at 222. This form of implied dedication is not involved in the instant case.
[1] Note 6 lists the following citations: McDonogh v. Calloway, 8 Rob. 92 (La. 1844); New Orleans & C.R.R. Co. v. Town of Carrollton, 3 La.Ann. 282 (1848); Town of Carrollton v. Jones, 7 La.Ann. 233 (1852); Xiques v. Bujac, 7 La.Ann 498 (1852); Saulet v. City of New Orleans, 10 La.Ann. 81 (1855); David v. Municipality No. Two, 14 La.Ann. 872 (1859); Heirs of David v. New Orleans, 16 La. Ann. 404 (1862); City of Baton Rouge v. Bird, 21 La. Ann. 244 (1869).
[2] LSA-C.C. art. 454 provides: "Owners of private things may freely dispose of them under modifications established by law."
[3] LSA-C.C. art. 455 provides: "Private things may be subject to public use in accordance with law or by dedication."

The comments indicate that although the provision is new, it does not change the law, thus implicitly recognizing legislatively the concept of implied dedication. The comments further state that in Louisiana decisions, private things subject to public use are frequently termed "public things", whether they belong to the state, its political subdivision, or to private persons. Private things of the state and its political subdivisions, and things belonging to private persons may be subject to public use as a result of a legal provision or dedication.
[4] Comment (b) for LSA-C.C. art. 730, although referring to instruments establishing predial servitudes, states the general rule regarding predial servitudes. The comment provides in pertinent part:

It is a cardinal rule of interpretation that, in case of doubt, instruments purporting to establish predial servitudes are always interpreted in favor of the owner of the property to be affected. The rule incorporates into Louisiana law the civilian principle that any doubt as to the free use of immovable property must be resolved in favorem libertatis. The Louisiana Supreme Court has repeatedly declared that "servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by law." [Citations omitted.]
[5] Entitled "Public roads," LSA-R.S. 48:491 provides in pertinent part:

B. (1)(a) All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.
[6] A judgment and reasons for judgment are two separate and distinct documents. LSA-C.C.P. art.1918. Appeals are taken from the judgment, not the written reasons for judgment. McCalmont v. Jefferson Parish Sheriff's Office, 99-940, p. 6 (La.App. 5 Cir. 1/12/00), 748 So.2d 1286, 1290, writ denied, XXXX-XXXX (La.4/20/00), 760 So.2d 1160.
[7] "Navigable" as used above means able to support waterborne commerce, i.e., width and depth of waterway sufficient for boat traffic. However, a waterway may be navigable, but there be no navigation because no boats travel on the waterway. "Navigation" as used in this context means boats actually used the waterway.