I,DAVID S. GORBATY, Judge.
Plaintiffs appeal a judgment rendered in favor of defendants arguing that the jury erred in applying the law to the undisputed facts presented at trial. Further, plaintiffs argue that the trial court erred in denying their Judgment Notwithstanding the Verdict or, in the alternative, Motion for New Trial. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY:
Maria Antonia Ramirez, a Honduras native visiting this country, was injured near the streetcar tracks at the intersection of St. Charles Avenue and Dufossat Street in uptown New Orleans.
Ms. Ramirez and her friend, Belda Medina, had finished visiting with Ms. Medina’s employer who apparently lived on the riverside of St. Charles on Dufossat. The women intended to board the streetcar to downtown New Orleans. Ms. Medina’s employer had given Ms. Ramirez some clothing and shoes for her use in Honduras, but because some of the clothes were for cold weather, the two women decided to place the cold weather items near the lakeside comer of Dufossat and St. Charles for someone else to pick up.
According to Ms. Medina, she and Ms. Ramirez completely crossed both sets of tracks, and Ms. Ramirez waited on the neutral ground while Ms. Medina ^crossed the westbound lanes of St. Charles to drop off the clothes. When Ms. Medina turned around to cross back, she saw the streetcar approaching and yelled to Ms. Ramirez, “Be careful, the streetcar.” Ms. Medina said Ms. Ramirez then turned to *381 her left (the direction opposite of where the streetcar was approaching), spun around, and fell. When she first saw the streetcar approaching, Ms. Medina was of the opinion that Ms. Ramirez was in a place where the streetcar could pass without hitting her.
Ms. Ramirez testified that she heard Ms. Medina yell to her from across the street. She explained that she turned to her left, but “then I don’t know when the streetcar hit me.” She had no recollection of anything else until sometime later at the hospital.
After Ms. Ramirez fell, the operator of the streetcar, Michael Parker, stopped the streetcar. There is some dispute as to exactly where he stopped. Mr. Parker claims he did not stop until the service stop at Valmont Street, the corner past Dufossat. However, Mr. Parker’s supervisor testified that when he arrived on the scene ten to twenty minutes after the accident, the streetcar was still near the intersection of Dufossat and St. Charles.
According to Mr. Parker, he saw Ms. Ramirez as he approached the intersection. Although he claimed she was near the curb at that time, he did state that she was about three feet from the side of his streetcar as he passed her. He admitted that he did not sound his warning bell as he approached. However, he testified that his brakes were engaged because of the heavy traffic situation at that time of day, and that he was certain he could clear Ms. Ramirez as he passed. He saw Ms. Ramirez out the glass on the side of the streetcar as he passed her, and made sure that the overhang of the vehicle also cleared. He did hot know that there |Rwas an accident until he looked in his sideview mirror and saw Ms. Ramirez on the ground. Mr. Parker used a passenger’s cell phone to call his dispatcher to report the accident as per company policy. He also asked all passengers to sign a list he provided if they had witnessed what happened. Only three people signed the list.
Dan Fontenot, a FBI special agent stationed in Baton Rouge, was visiting the city that day. He and some friends were enjoying a ride on the streetcar in question. Mr. Fontenot stated that he was seated on the aisle somewhere between halfway and three-quarters of the way to the back of the car. He claimed that he could see Ms. Ramirez out of the front of the streetcar as it approached her, but he did not see the streetcar strike Ms. Ramirez. As they passed Ms. Ramirez, someone to his right or slightly behind him yelled, “oh, my God,” or “she’s been hit.” He stood up and looked to his right, but could not see anything. He looked forward and saw the operator look in his mirror, brake, and stop the streetcar. The operator ran out of the streetcar with a phone or walkie-talkie, and went to where Ms. Ramirez was lying on the ground. Mr. Fontenot did not recall the operator slowing down or sounding his horn or bell prior to passing Ms. Ramirez. He testified that the operator asked each passenger as they disembarked to sign a list if they had seen or heard anything. Mr. Fontenot signed the list. On cross-examination, Mr. Fontenot testified that he approximated Ms. Ramirez to be four or five feet from the side of the streetcar when he first saw her. He saw the front of the car pass without hitting her. It was his opinion that if the streetcar had hit Ms. Ramirez, he could have seen it from his vantage point.
Following a two-day trial, the jury returned a verdict finding that defendants were not negligent. The trial court made the verdict the judgment of the court. Plaintiffs thereafter filed a Motion for Judgment Notwithstanding the Verdict, or, |4in the alternative, Motion for a New Tri *382 al, which the trial court denied. In written reasons, the trial court stated:
Despite the fact that this Court disagrees with the jury’s verdict, this Court will not upset a verdict based on the credibility of the witnesses. The jury believed the testimony of the streetcar operator that Mrs. Ramirez, with her back turned, was a safe distance from the tracks. He had no reason to slow down, or sound his horn. He had no reason to anticipate that she would turn at all.
This appeal followed.
DISCUSSION:
In their first assignment of error, plaintiffs argue that the jury erred in applying the law to the undisputed facts. Therefore, because the jury committed legal error, this Court should conduct a de novo review, and reverse the jury’s verdict. Defendants counter that no legal error was committed; rather, the only issue for review is under the manifest error/clearly wrong standard. As stated by the trial court, the jury’s verdict was based on the credibility of the witnesses.
In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard which precludes the setting aside of a trial court’s finding of fact unless those findings are clearly wrong in light of the record reviewed in its entirety. Cenac v. Public Access Water Rights Assn., 2002-2660 (La.6/27/03), 851 So.2d 1006, citing Rosell v. ESCO, 549 So.2d 840 (La.1989). A reviewing court may not merely decide if it would have found the facts of the case differently, the reviewing court should affirm the trial court where the trial court judgment is not clearly wrong or manifestly erroneous. Ambrose v. New Orleans Police Dep’t Ambulance Serv., 93-3099, 93-3110, 93-3112, p. 8 (La.7/5/94), 639 So.2d 216, 221.
| .^Because the jury verdict is based on a credibility call, we are restrained from finding the jury’s decision to be manifestly erroneous or clearly wrong. The trial court is in a much better position to evaluate live witnesses (as opposed to the appellate court who must review a cold record). Further, this principle of review is designed to ensure the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
After carefully reviewing the entire record, we agree with defendants that the jury did not believe that the streetcar actually struck Ms. Ramirez. Therefore, her accident was caused when she fell of her own accord.
Not one witness testified that the streetcar struck Ms. Ramirez. Ms. Medina, plaintiff’s friend, and the only witness to observe the streetcar and Ms. Ramirez before the fall, testified that she did not see the streetcar physically hit Ms. Ramirez. She stated:
Everything went so fast that I couldn’t tell you exactly what happened. I only saw her that she took a complete turn, and I saw her fall. And I saw her in the middle of the tracks. I can’t specify whether it hit her, whether it ran her over. I can’t.
She further stated:
If you’re standing next to a streetcar as it goes by and it goes by very fast, it feels like it pulls you in a way. But I couldn’t tell you whether he pulled her or whether he hit [her], I just don’t know. Because the only thing I saw is that she spun around and she fell down. And it looked to me like she had fallen underneath the wheels of the streetcar.
IfiMr. Parker, the streetcar operator, testified that he saw Ms. Ramirez still stand *383 ing after the front part of the streetcar passed her. Dan Fontenot, a passenger on the streetcar, testified that he saw the front of the car pass without hitting Ms. Ramirez. It was his opinion that if the streetcar had hit Ms. Ramirez, he could have seen it from his vantage point. It was clear from Ms. Ramirez’s testimony that she did not know for certain that the streetcar struck her causing her to fall.
Dr. Raul Diaz, Ms. Ramirez’s treating orthopedic surgeon, testified that he could not tell from looking at the x-rays whether the fractures incurred were caused by a blow from a streetcar or from hitting the ground after falling.
It was crucial for plaintiffs to establish that the streetcar actually struck Ms. Ramirez to carry their burden of proof. Without such evidence, we cannot say that the jury erred in finding defendants not negligent.
Accordingly, we affirm the judgment of the trial court and pretermit discussion of the remaining assignments of error.
AFFIRMED.