STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-891


HWW ENTERPRISES, INC. D/B/A WORLDWIDE PROFESSIONAL
SERVICES

VERSUS

ENVIRONMENTAL TREATMENT TEAM, L.L.C.


\**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-17219
HONORABLE ARTHUR J. PLANCHARD, DISTRICT JUDGE

\**********

ELIZABETH A. PICKETT
JUDGE

\**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Elizabeth A. Pickett, Judges.

AFFIRMED.


Clayton  Davis
Thomas P. LeBlanc
Lundy & Davis, L.L.P.
P. O. Box 3010
Lake Charles, LA 70602-3010
Counsel for Plaintiff/Appellee:
        HWW Enterprises, Inc., D/B/A
        Worldwide Professional Services

**Brandon K. Black**
**Scott D. Chenevert**
**Jones, Walker, Waechter, Poitevent,**
 **Carrère & Denègre, L.L.P.**
**8555 United Plaza Blvd.**
**Four United Plaza, 5th Floor**
**Baton Rouge, LA 70809-7000**
**Counsel for Defendant/Appellant:**
    **CCS Energy Services, L.L.C., formerly**
    **Environmental Treatment Team, L.L.C.**

**Jonathan Hadley Fontenot**
**Attorney at Law**
**101 Glouchester #6**
**Lafayette, LA 70506**
**Counsel for Defendant/Appellant:**
    **CCS Energy Services, L.L.C., formerly**
    **Environmental Treatment Team, L.L.C.**

**Pickett, Judge.**

The defendant, Environmental Treatment Team, L.L.C. (ETT), appeals a judgment of the trial court making the plaintiff's, HWW Enterprises, Inc. d/b/a Worldwide Professional Services' (HWW), rule to evict absolute and ordering ETT to vacate the premises at 672 Wakefield Road, Cameron, Louisiana. We affirm the judgment of the trial court.

## LAW AND DISCUSSION

The resolution of this case hinges on factual determinations of the trial judge. This court recounted the standard of review to be applied in such cases in *Pecot v. Calcasieu-Cameron Hosp. Serv. Dist.*, 03-1102, p. 1 (La.App. 3 Cir. 2/18/04), 867 So.2d 56, 58, *writ denied*, 04-719 (La. 5/7/04), 872 So.2d 1085:

> Inasmuch as this appeal turns on factual determinations by the trial judge, we must review the record using the manifest error-clearly wrong standard of appellate review. That standard was recently reviewed by our supreme court in *Cenac v. Public Access Water Rights Assn.*, 02-2660, pp. 9-10 (La.6/27/03), 851 So.2d 1006, 1023:
>
>> In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard which precludes the setting aside of a trial court's finding of fact unless those findings are clearly wrong in light of the record reviewed in its entirety. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A reviewing court may not merely decide if it would have found the facts of the case differently, the reviewing court should affirm the trial court where the trial court judgment is not clearly wrong or manifestly erroneous. *Ambrose v. New Orleans Police Department Ambulance Service*, 93-3099, 93-3110, 93-3112, p. 8 (La.7/5/94), 639 So.2d 216, 221.

In the case sub judice, the trial court dictated extensive reasons for its judgment into the record, setting out the law and the facts in great detail. Our review of the record finds both to be accurate. Accordingly, we adopt the trial court's reasons for judgment as our own:

1

This is in the matter of HWW Enterprises, Incorporated d/b/a Worldwide Professional Services versus Environmental Treatment Team, LLC, No. 10-17219 in Cameron Parish.

This case involves the alleged breach of a sublease agreement between plaintiff, HWW Enterprises, Incorporated and the defendant, Environmental Treatment Team, LLC, ETT.

The sublease commenced on November the 1st, 2003 on a parcel of property located at 672 Wakefield Road, Cameron Parish, Louisiana which was to be used for the operation of a non-hazardous oilfield waste transfer station.

The sublease included provision[s] for a rental term of four years and seven months with a rental option of an additional five years. ETT was to pay $84,000 per year in semi-annual payments of $42,000 due on the 1st day of May and the 1st day of November of each year.

Parties also included in the sublease an agreement whereby ETT would rent exclusively from HWW all cranes and equipment they may need for their project. The default provision of the contract or sublease provide[s] that if ETT fails to pay any rentals due or fails to perform any other agreement within the sublease and the default continues for a period of five days after written notice to ETT, then HWW would have the right to cancel the sublease effective 30 days after written notice by certified mail to ETT.

The facts of this case shows that ETT failed to pay the rent due on May the 1st, 2005, and HWW did, however, through Worldwide Professional Services, receive a check from ETT on May 18th, 2005 in the amount of $32,371.86.

The facts show that sometime in January of 2005 ETT began leasing a forklift from a third party lessor, and in March of 2005 began leasing a crane from a third party all contrary to its sublease with HWW.

After this alleged breach by ETT, HWW on June the 1st, 2005, by certified mail, gave ETT written notice of its breach of the sublease agreement for failure to pay rent as well as the lease of equipment from a third party. ETT did nothing to correct the problem within five days of its receipt of HWW's notice. HWW then gave notice of its cancellation of the sublease agreement effective 30 days from June 21st, 2005.

HWW Enterprises filed the present rule to evict on August the 10th of 2005. HWW argues that it has fully complied with the provisions [of the sub-lease] and prays that the Court grant its rule to evict and order ETT to vacate the premises.

ETT, on the other hand, argues that it has not breached the sublease and have argued certain defenses affirmatively in their answer to the rule of eviction. They request that it be denied.

ETT argues that they should be entitled to a setoff because HWW did not have the necessary equipment they needed which resulted in ETT sustaining damages in the amount of $9,628.14.

Since HWW did not have the equipment needed by ETT, ETT had to pursue equipment through a third party and they should therefore be owed to setoff this amount from the May 1st, 2005 rental rather than under the separate equipment rental agreement.

The testimony in this case shows that the parties had a dispute concerning the rental agreement between them; that is the rental agreement for the equipment which was separate and apart from the sublease agreement.

This dispute, of course, arose earlier than the alleged violation of the sublease and they had a dispute over the sublease agreement and the failure to pay the rental due May the 1st of 2005. There is no dispute that the annual rental was $84,000 [payable] in semiannual payments of $42,000 on May the 1st, 2005 and November the 1st, 2005, that the May 1st payment was not paid until May the 18th of 2005 and that payment was in the amount of $32,371.86 which is $9,628.14 less than the sublease contract called for.

Mr. Rob Mosely, Director of Engineering for ETT, stated that the $9,628.14 was deducted from the rental payment because he felt that they were owed that amount by HWW Enterprises because of the additional cost for the rental of 150-ton crane and 8,000-pound forklift that plaintiff failed to furnish to them.

Mr. Mosely stated that he attempted to talk to Mr. Wilson regarding the payment but could not get him to return his call. Mr. Mosely also stated that he did talk to Mr. Wilson, vice president of HWW on or about May the 1st, 2005 by telephone and offered to either pay the total amount of the rent of $42,000 to the original lessor or the lesser amount to Worldwide Services.

Mr. Wilson, on the other hand, stated that the offer was made to him but he did not agree but rather stated he would have to discuss this with his attorney.

Afer Mr. Mosely did not hear from Mr. Wilson, he decided to send the lesser amount of rent to Worldwide by check dated May the 16th, 2005 without any explanation of the payment or notice or information of how he arrived at the lesser amount.

When the check was received, it appears Mr. Wilson referred this check to his attorney, and the attorney returned the check to Worldwide and the check was later deposited.

In deciding this case, the Court has to take into consideration the plain language of the contract [and the] sublease entered into by both parties. This is the law between the parties. . . .[*See Blalock v. Lord*, 05-939 (La.App. 3 Cir. 2/1/06), 927 So.2d 1142, *writ denied*, 06-1624 (La. 9/26/06), 937 So.2d 847. The Court also] considered the default provision of *Article* 9. It reads (as read) that in the event that a material default is committed by [sublessee] at any time in prompt payment of any rental hereunder and such default shall continue for a period of five days after notice of such default is by given by sub-lessor to sub-lessee, or a default is committed by sub-lessee at any time in the prompt payment of any other sum payable by sub-lessee to sub-lessor hereunder and such default shall continue for a period of five days after notice of such default is given by sub-lessor to sub-lessee, or default be made by sub-lessee in due observance and performance of any other covenant, condition or stipulation herein agreed by the sub-lessee and such default continue for a period of five days after written notice thereof is given by sub-lessor to sub-lessee the sub-lessor shall on notice to the sub-lessee, have the right to cancel this lease effective 30 days after written notice provided to the sub-lessee by certified mail.

Th[at] is [the] portion of. . . . *Article* 9 that the Court considered. It appears that in this instance HWW followed the provisions of the sublease and declared the sublease terminated.

I also noted that in the article or in the sublease agreement *Article 16d* [states] that this sublease agreement would not be changed orally or terminated. This sublease agreement apparently, in this instance, the provision reads that the sublease agreement and the exhibits appended hereto and incorporated herein by reference contain the entire agreement between the parties hereto with respect to the subject matter hereof [and] supercedes any prior agreements or understanding between the parties with respect to the subject matter hereof and no change, modification or discharge in whole or in part shall be effective unless such change modification or discharge is in writing and signed by the party against whom enforcement of the change, modification or discharge is sought. This sublease agreement cannot be changed or terminated orally.

ETT tried, in this instance, to orally change the agreement without any acknowledgment of the clear provisions of the sublease. This Court cannot accept the argument, in this particular instance, for a setoff which arises from a separate agreement between the parties concerning the rental of the equipment. The sublease only provides that the sub-lessee would rent all of its needed equipment from the sub-lessor.

The sub-lessee agreed that there was an accord and satisfaction argued --- excuse me---that there was an accord and satisfaction in this case and that their eviction should not be granted. Three conditions must present to consider accord and satisfaction: 1) a non-liquidated or disputed claim which in this instance there was, 2) a tender by the debtor, however, there's some question as to whether the check was a tender by debtor, and 3) an acceptance of the tender by the creditor. [*See Anesthesia East, Inc. v. Bares*, 594 So.2d 1085 (La.App. 4 Cir. 1992).] In this particular instance, the testimony clearly shows the Court that there was no acceptance of the tender by the creditor. In addition, there was a letter from the attorney to the respondent that the amount of funds furnished were not sufficient and they considered them in default of their contract.

Considering the testimony of Mr. Mosely and Mr. Wilson, the Court is of the belief that there was no acceptance of the lesser amount by HWW; therefore, accord and satisfaction does not apply.

ETT also pled and argued that the Court should apply the doctrine of judicial control. ETT argues that it acted in good faith in this particular instance. The doctrine of judicial control is an equitable doctrine by which the Courts will deny cancellation of a lease when the lessee's breach is of minor importance[,] is caused by no fault of his own[,] or is based on a good faith mistake of fact. [*See Carriere v. Bank of Louisiana*, 95-3058 (La. 12/13/96), 702 So.2d 648.]

In this particular instance, the Court does not find that there was any mistake of fact in this particular instance, and the defendant pursued the route of not accepting the fact that the amount of the rent had not been paid fully and that the contract was not followed to the letter. Considering the facts of this case, the Court refuses to apply judicial control.

After considering the testimony presented in this case, the documents introduced, the evidence, [and] the argument of counsel, the Court is satisfied that the judgment of eviction should be entered in favor of HWW Enterprises and against Environment Treatment Team, LLC. The costs will be paid by Environment Treatment Team, LLC.

Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the appellant, Environment Treatment Team, LLC.

**AFFIRMED.**