Dear Mr. Mitchell:
You have requested an opinion from this Office regarding several questions related to "paving liens". The factual background that you present to us can be summarized as follows:
For some time, the Ouachita Parish Police Jury ("OPPJ") has been undertaking a program to pave all of the gravel roads within the public roads system. For many years, it has been a policy of the OPPJ to refrain from accepting new nonpaved roads into its system in order to minimize the influx of additional paving obligations for the Parish. However, a proliferation of new developments in rural areas has increased the number of residents along private nonpaved roads who are requesting that the OPPJ accept dedications of these roads as public. In the past, the OPPJ has employed the paving lien process in La.R.S. 33:3681, et seq., to accomplish the acceptance of such dedications and to provide for the proper paving of these newly acquired roads.
A "paving lien", is described thusly in La.R.S. 33:3681:
 The police juries may pave, plank, gravel, macadamize, or otherwise improve the streets and alleys or any part thereof not less than one block in length, and the sidewalks, or any part thereof, and construct curbing in areas outside of municipalities and may levy and collect special taxes or local assessments on all real estate abutting the streets, alleys, sidewalks, or curbing to be improved or constructed for the purpose of defraying the costs of the improvements either in whole or in part, as hereinafter provided.
Based upon the above language, a paving lien is a special tax or assessment on real estate abutting roads improved by a municipality. With this definition in mind, you have asked the following eight questions: *Page 2 
 1. La.R.S. 33:3682: "Upon the written petition of the owners of not less than fifty per cent of the front footage of land abutting a street or road, or portion thereof, to be improved, any parish, Orleans excepted, shall improve such street or road . . ." Does the mandatory language of that statute require a parish to employ the "Paving Lien Process" to make public and improve a road that is private at the time of the petition or does this mandatory language only apply to existing public roads?
 2. If a road is improved pursuant to this process, does La.R.S. 33:3683 allow the work to be performed by public forces if the cost is below the Bid Limit of the Public Bid Law?
 3. West's Louisiana Revised Statutes contain two versions of La.R.S. 33:3688, each amended by different Acts in 1950. Both versions of the statute purport to govern the terms of the landowners' repayment to the parish. One version of the statute provides for 15 yearly installments and the other provides for 10 yearly installments. Which version controls?
 4. La.R.S. 33:3686 provides that the installment payments on these paving liens "shall not exceed five percent per annum." Does this provision limit the parish to charging 5% interest without respect to prevailing market rates, the landowners' credit history or ability to pay, or the parish's cost if it borrows funds to pay the cost of the improvements?
 5. If the "Paving Lien Process" can be applied to require the parish to finance the cost of bringing a private road into the public system does doing so constitute a loan of public funds prohibited by La.Const. Art. VII, Sec. 14?
 6. If the parish can employ the paving lien process to make private gravel roads public, can the parish employ similar paving liens to bring a private hard surfaced road up to parish specification and make it public?
 7. May the parish properly expend public funds to prepare a cost estimate or specifications for improvements necessary to bring a private road into the public system pursuant to the "Paving Lien Process," particularly if such preparation involves engineering fees, soil testing, surveying, etc.?
 8. If the making of improvements pursuant to a landowner petition is mandatory, is the parish under any specific deadline to initiate the construction? Is the parish's financial condition or budgetary constraints relevant?
Each of the above questions is answered, in order, below.
1. Does the mandatory language of La.R.S. 33:3682 require a parish toemploy the "Paving Lien Process" to make public and improve a *Page 3 road that is private at the time of the petition or does this mandatorylanguage only apply to existing public roads?
The text of La.R.S. 33:3682 provides as follows:
 Upon the written petition of the owners of not less than fifty per cent of the front footage of land abutting a street or road, or portion thereof, to be improved, any parish, Orleans excepted, shall improve such street or road, or portion thereof one block or more in length, and may levy and collect special taxes or local assessments on the property abutting the street or road to be improved for the purpose of defraying the entire cost of the improvement, the abutting real estate owners shall be determined by the conveyance records of the parish in which such property is situated.
A question substantially similar to this one was presented to this Office in 1979. In La. Atty. Gen. Op. No. 79-46, we stated that:
 [La.R.S. 33:3682] makes it mandatory upon the police jury to improve the street or road upon the petition of the owners of at least fifty percent of the front frontage of land abutting the street or road. Thus, under the statute, a petition may be circulated among the landowners urging the police jury to take the steps necessary to repair and maintain the road. The word "shall" in R.S. 33:3682 is clearly mandatory and requires the Police Jury to undertake such work if the written petition is submitted to it by the abutting landowners.
It is important to note that, although the relevant law has not changed since the issuance of La. Atty. Gen. Op. No. 79-46 and although we see no error with the analysis and conclusions of that opinion, that opinion considered only the responsibilities of a police jury with regard to roads that were already public. Thus, we adopt and herein incorporate the analysis and conclusions set forth in La. Atty. Gen. Op. No. 79-46 as to the language of La.R.S. 33:3682 with regard to public roads. Accordingly, it is our opinion that the mandatory language of La.R.S.33:3682 requires the parish to employ the process for public roads when the governing authority is properly petitioned under that law.
However, no jurisprudence or any opinion of this office has ever considered whether La.R.S. 33:3682 imposes a mandatory duty on police juries with regard to private roads. Louisiana Revised Statute 33:3682
contains no distinction between public and private roads. Although we are cognizant of the limitations on public entities' use of public funds to improve private things that are embodied in La.Const. Art. VII, Sec. 14(A), [1] we do not see La.R.S. 33:3682 as a contradiction to that limitation. *Page 4 
We have opined on numerous occasions that public funds cannot be employed to improve private roads.[2] However, it is our opinion that a proper petition under La.R.S. 33:3682, requesting parish assistance with the maintaining of a private road effectuates an implied dedication of the road to public.[3] An implied dedication of a road is accomplished without any express or written act of dedication, but with a plain and positive intent to give and a correlative plain and positive intent to accept the dedication. Id. Under the current scenario, the plain and positive intent to give is evidenced by the petition to the parish and the plain and positive intent to accept is provided by law (under the "shall" language of La.R.S. 33:3682).[4] Thus, it is our opinion that the application of La.R.S. 33:3682 to a private road is not a violation of La.Const. Art. VII, Sec. 14(A) because the private parties' voluntary submission to the public maintenance process effectuates an implied dedication of the subject road to the public (i.e., for all intents and purposes, the subject road becomes a public road).[5]
2. If a road is improved pursuant to this process, does La.R.S. 33:3683allow the work to be performed by public forces if the cost is below thebid limit of the Public Bid Law?
The answer to this question has been succinctly set forth in La. Atty. Gen. Op. No. 10-0058. In that opinion, we stated that:
 Under Louisiana's Public Bid Law, contracts for public works projects exceeding $150,000 must be advertised and let to the lowest responsible and responsive bidder. A public works project means the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased *Page 5 
by a public entity. La.Rev.Stat. 38:2211. Public works projects that are estimated to cost less than $150,000 are not subject to the advertising and bidding requirements of the Public Bid Law may be undertaken by the public entity with its own employees or may be negotiated with one or more contractors.
We are of the opinion that the same conclusion that the Louisiana Public Bid Law applies to your question. Accordingly, if the cost of improving a road properly petitioned under La.R.S. 33:3682 is less than $150,000, the public entity so petitioned may undertake the work itself.
3. West's Louisiana Revised Statutes contain two versions of La.R.S.33:3688, each amended by different Acts in 1950. Both versions of thestatute purport to govern the terms of the landowners' repayment to theparish. One version of the statute provides for 15 yearly installments andthe other provides for 10 yearly installments. Which version controls?
These two provisions of La.R.S. 33:3688 are not contradictory. Accordingly, they are both "controlling" law with regard to the repayment of the paving lien. For the purposes of clarity, one version of La.R.S.33:3688 states that:
 The governing authority of the parish shall provide in the ordinance accepting the work and making the assessment that the property owners therein assessed, (including the parish where it owns property abutting on the street paved), availing themselves of the privilege within ten days after the passage of the ordinance, may (1) within ten days after passage of the ordinance pay in cash one-fifteenth of the amount of their indebtedness and pay the balance in fourteen equal annual installments. As evidence of these deferred payments the property owners shall sign fourteen promissory notes each for one-fifteenth of the amount due and payable, one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen and fourteen years from date respectively or sooner at the option of the maker. The notes shall be made payable to the order of the parish, dated ten days after passage of said ordinance, bearing interest at a maximum rate of five per cent per annum from date until paid, payable annually, and ten per cent attorney's fees if placed in the hands of an attorney for collection after maturity, which notes, when paraphed by the clerk or secretary of the parish police jury to identify them with the ordinance levying the assessment, shall carry with them in the possession of any bona fide owner as to lots or land owned by it abutting on the street or road improved under R.S. 33:3681 through R.S. 33:3689, and the governing authority of the parish shall have the right to issue certificates, notes or other evidence of debt, to represent the *Page 6 
deferred payments on its assessment, levied against it in the ordinance accepting the work and levying the assessments therefor and fixing the terms of payment. At the time of the issuance of the certificates, notes, or other evidences of debt the governing authority shall, by ordinance, provide for their payment and set aside, dedicate and pledge so much of the general revenues of the parish in each year for the years through which the certificates, notes or other evidences of debt may run, as may be necessary to pay them in principal and interest as they mature. This dedication and pledge shall be incorporated in the certificates, notes or other evidences of debt when issued, and shall constitute a fixed charge against the general revenues of the parish. The notes may be transferred by the parish, without recourse, to the contractor, at their face value, in payment pro tanto of the work done by him, and the contractor or his transferee shall enjoy the lien and privilege and all other rights accruing to the parish ordering the work.[6]
The other version of La.R.S. 33:3688 states that:
 The police jury may, in their discretion, in the ordinance accepting the work and making said assessments, allow all property owners therein assessed, who, within thirty days after the passage of said ordinance, make written application therefor and pay in cash ten per cent of the amount of their indebtedness, to pay the balance of the indebtedness in nine equal annual installments; provided that as evidence of the deferred payments, the property owner so applying and depositing the ten per cent, shall sign and execute nine promissory notes, payable to the order of the parish, each for ten per cent of the amount due by him, dated thirty days after the passage of the ordinance accepting the work, maturing respectively one to nine years from date, or sooner, at the option of the owner, bearing annual interest from date at the rate fixed by the police jury pursuant to R.S. 33:3686, and ten per cent attorney's fees in event of suit to enforce collection after maturity, which notes, paraphed by the secretary or clerk of the police jury as being "secured by Assessment No. ___ of local Assessment Ordinance No. ___" shall carry with them the lien and privilege above provided. The notes may be transferred by the parish, without recourse, to the contractor, at their face value, in payment pro tanto of the work done by him.
 The said property owner shall have the right at option to pay twenty per centum of his indebtedness in cash, and give notes due at 1, 2, *Page 7 
3 and 4 years for twenty per centum, each, for said indebtedness, said notes to be in all other respects as hereinabove set out.[7]
Under this language, the default repayment scheme is through an initial payment of one-fifteenth (1/15) of the costs of the lien, to be followed by fourteen (14) successive individual annual installment payments on the lien. The assessed parties under this scheme also have an option to pay the lien in a shorter, ten-year (10), time frame. This option must be affirmatively elected by the assessed parties and may only be put in place at the discretion of the parish following such an affirmative request. Under the ten-year language, the assessed parties make an initial payment of one-tenth (1/10) of the costs of the lien, to be followed by nine (9) successive annual installment payments on the lien.
Thus, neither provision of La.R.S. 33:3688 is "controlling". However, the default provision, absent a request from the assessed parties and approval of that request by the parish, is for repayment of the lien in 15 annual installments.
4. La.R.S. 33:3686 provides that the installment payments on these pavingliens "shall not exceed five percent per annum." Does this provisionlimit the parish to charging 5% interest without respect to prevailingmarket rates, the landowners' credit history or ability to pay, or theparish's cost if it borrows funds to pay the cost of the improvements?
Under La.R.S. 1:3,
 [w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. The word "shall" is mandatory and the word "may" is permissive.
The language of La.R.S. 33:3686 is clear and unambiguous. In addition, the use of the word "shall" makes the language of this statute mandatory. Accordingly, it is our opinion that this provision does limit the parish to charging 5% (five) interest on the paving liens, irrespective of other factors.
5. If the "Paving Lien Process" can be applied to require the parish tofinance the cost of bringing a private road into the public system doesdoing so constitute a loan of public funds prohibited by La.Const. Art.VII, Sec. 14? *Page 8 
For the reasons set forth in our answer to question one, supra, as well as for the reasons more fully addressed below, it is our opinion that the paving lien process would not be a violation of La.Const. Art. VII, Sec. 14, as this process, with regard to private roads, constitutes an implied dedication of the roads to the public. In fact, the language of La.R.S. 33:3682 is tailored to avoid a conflict with La.Const. Art. VII, Sec. 14(A).
Once properly petitioned, La.R.S. 33:3682 clearly imposes a mandatory duty on a parish to improve a road (i.e., ". . . shall improve such street or road . . .").[8] It is clear that if such a petition was made as to private property, there would be a violation of La.Const. Art. VII, Sec. 14(A) because public funds would be used to improve a private road. In this regard, we are referring to the language of La.Const. Art. VII, Sec. 14(A) prohibiting the "loan" of public things for the benefit of private things (in this case, the "lien" is clearly a "loan" under La.Const. Art. VII, Sec. 14(A)). Thus, no paving lien could be used to defray the costs of improving a private road that was to remain private after the improvements were completed. Thus, as noted supra, as to private roads, a proper petition under La.R.S. 33:3682 must be classified as an implicit dedication of the road to the public.[9] Once dedicated to the public, the parish is free to make improvements to the road without running afoul of La.Const. Art. VII, Sec. 14(A). In addition, as we noted in La. Atty. Gen. Op. No. 79-46, the police jury is free, within its discretion, [10] to institute a paving lien to defray its costs for the improvements (however, it need not do so, as such improvements would be a use of public funds to improve now-public property).[11] *Page 9 
6. If the parish can employ the paving lien process to make privategravel roads public, can the parish employ similar paving liens to bringa private hard surfaced road up to parish specification and make itpublic?
As is set forth in the language of La.R.S. 33:3681, quoted supra, this statute provides, not only for the paving of roads, but for the general improvement of streets through the paving lien process. Accordingly, it is our opinion that, under La.R.S. 33:3681, et seq., the parish may employ the paving lien process, when properly petitioned, to incorporate private hard-surfaced roads into the public road system through improvements to parish specifications.
7. May the parish properly expend public funds to prepare a cost estimateor specifications for improvements necessary to bring a private road intothe public system pursuant to the "Paving Lien Process," particularly ifsuch preparation involves engineering fees, soil testing, surveying,etc.?
As noted in the answers to questions one and five, supra, there is no violation of La.Const. Art. VII, Sec. 14(A) if a parish has been properly petitioned to bring a road into the public system of roads under La.R.S. 33:3681, et seq.[12] For the same reason, it is our opinion that the expenditure of public funds under these provisions for the preparatory work necessary to institute the mandatory process is similarly public in nature and is not violative of La.Const. Art. VII, Sec. 14(A).[13] Accordingly, the parish may expend public funds to prepare a road for inclusion in the public system.
8. If the making of improvements pursuant to a landowner petition ismandatory, is the parish under any specific deadline to initiate theconstruction? Is the parish's financial condition or budgetaryconstraints relevant?
This question was addressed in La. Atty. Gen. Op. No. 85-149. In that opinion, we noted that the implicated laws herein can,
 take into account the particular factual circumstances of all parish governing authorities or the financial condition or resources available to the various parishes. Accordingly, there may be other considerations which would prevent a parish governing authority *Page 10 
from taking immediate action to repair and maintain roads and streets within its jurisdiction.[14]
Thus, it is our opinion, consistent with La. Atty. Gen. Op. No. 85-149, that there is no specific deadline within which a parish must act on a properly petitioned paving lien request. Action under the relevant laws must occur, but such action is subject to the limitations of available resources and finances of the petitioned parish.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: __________________________ ROAN M. SEIDEMANN Assistant Attorney General
 JDC/RMS/tp
[1] La.Const. Art. VII, Sec. 14(A) states, in pertinent part, that,
 [e]xcept as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . .
[2] See e.g., La. Atty. Gen. Op. No. 00-347. See also La. Atty. Gen. Op. No. 10-0172 (stating that ". . . there are numerous constitutional, statutory, and jurisprudential restrictions on the State maintaining a private road.").
[3] See A. N. Yiannopoulos, 2 LA. CIV. L. TREATISE, PROPERTY § 98 (4th ed.) and the authorities cited therein.
[4] See Vaughn v. Williams, 345 So.2d 1195, 1198 (La. App. 2 Cir. 1977) ("Implied dedication, nonstatutory in nature, requires both the landowner's intent to create a public road and the public's acceptance of the landowner's offer."). In Cenac v. Public Access Water RightsAssociation, 2002-2660 (La. 6/27/03), 851 So.2d 1006, the Louisiana Supreme Court noted the high burden to demonstrate that an implied dedication had been made. However, it is our opinion that this burden is easily met in situations such as this, where the public voluntarily submits itself to a program designed to use public funds to improve a road. Such a submission should be seen as a clear "intent to give" for the purposes of satisfying the requirements of an implied dedication.
[5] It is important to note that the dedication here is an implicit
one; not the typical tacit dedication through maintenance of a road as exists in La.R.S. 48:491(B)(1)(a). This distinction is important, as the tacit dedication requires maintenance of a road for three years before it can be classified as dedicated to the public, whereas an implied dedication becomes effective immediately upon acceptance of the offer.
[6] La.R.S. 33:3688, as amended by Acts 1950, No. 71, § 1.
[7] La.R.S. 33:3688, as amended by Acts 1950, No. 156, § 1; Acts 1950, No. 316, § 7; Acts 1954, No. 661, § 1.
[8] La.R.S. 33:3682 (emphasis added).
[9] We must caution that, although we have here opined that the improvement process set forth in La.R.S. 33:3681, et seq., is mandatory when a parish is properly petitioned, we also recognize that there may be certain private roads that would not be fit for inclusion in the public road system by way of a dedication under the provisions of La.R.S. 33:3681,et seq. In this regard, we primarily refer to private roads that serve a limited purpose benefitting the private property of one estate. Such roads were described in La. Atty. Gen. Op. No. 99-345 as "those which are only open for the benefit of certain individuals, to go from and to their homes, for the service of their lands, and for the use of some estate exclusively." See also La. Atty. Gen. Op. No. 01-0229. Because it is difficult to conceive of such roads actually serving the public even if dedicated to that service, we believe that an application of the La.R.S.33:3681, et seq., process to those roads would constitute a violation of La.Const. Art. VII, Sec. 14(A), as no real public benefit can be said to be gained from such an application and the concomitant use of public funds. However, we also note that the determination of what particular roads would be considered as inappropriate candidates for the La.R.S.33:3681, et seq., process is a factual determination that would ultimately have to be made by a court of competent jurisdiction.
[10] The discretion referred to here is supplied by the "may" language in La.R.S. 33:3682 (i.e., ". . . and may levy and collect special taxes or local assessments on the property abutting the street or road to be improved for the purpose of defraying the entire cost of the improvement . . .) (emphasis added).
[11] It is also important to note that the repayment of the costs of the improvement through the paving lien process in La.R.S. 33:3682 does not constitute a "buy back" of the improved, now-public road by the abutting private owners. As we noted in La. Atty. Gen. Op. No. 79-46, specific procedures must be followed before the public can divest itself of road property. The same requirements apply here.
[12] It is important to note that the nonviolation of La.Const. Art. VII, Sec. 14(A) noted herein is a narrow exception. As we have noted on previous occasions, it is generally a violation of that constitutional provision to expend public funds for the improvement of a private road.See e.g., La. Atty. Gen. Op. No. 05-0299. However, because we here opine that such an improvement would effectively incorporate the road into the public road system (thereby making it an expenditure of public funds for a public use), we find no violation of La.Const. Art. VII, Sec. 14(A).
[13] See La. Atty. Gen. Op. No. 00-347.
[14] La. Atty. Gen. Op. No. 85-149. See also La. Atty. Gen. Op. No. 1944-46, p. 667; La. Atty. Gen. Op. No. 79-46.